# CHARLESTON.

## FRIEND v. MALLORY.

Submitted January 29, 1902.   Decided November 29, 1902.

1. LEASE—*Forfeiture.*

   An oil and gas lease containing the provision "That this lease shall become null and void, and all rights hereunder shall cease and determine unless a well shall be completed on the said premises within three months from the date hereof, or unless the lessee shall pay at the rate of twenty-two dollars and twenty-five cents quarterly in advance for each additional three months such completion is delayed from the time above mentioned for the completion of such well until a well is completed; and it is agreed that the completion of such well shall be and operate as a full liquidation of all rental under this provision during the

remainder of the term of this lease. Such payments may be direct to the lessors or deposited to their credit in the Wirt Co., Bank," and the further provision that the lessee "Shall have the privilege at any time to remove all machinery and fixtures placed on said premises and further shall have the right at any time to surrender this lease to first parties for cancellation, after which all payments and liabilities to accrue under and by virtue of its terms shall cease and determine and this lease become absolutely null and void." *Held:* That deposit of a payment by the lessee in such bank to the credit of the lessor on or before the date such payment would fall due is a sufficient payment to lessor and it is immaterial whether it is paid in lawful money or by check, draft or otherwise; and *Held* further, the lessor cannot avoid such lease or declare a forfeiture thereof within the time for which he has received the stipulated rental and a lease executed to a third party within such time intended as an act of forfeiture, is void. (p. 54).

2. SYLLABUS APPROVED.

Syllabus in *Boyd* v. *Brown*, 47 W. Va. 238, approved.

Appeal from Circuit Court, Wirt County.

Bill by F. J. Friend and others against F. T. Mallory and others. Decree for defendants, and plaintiffs appeal.

*Affirmed.*

T. A. BROWN and W. N. MILLER, for appellants.

VAN WINKLE & AMBLER, for appellees.

MCWHORTER, JUDGE:

On the 23d day of March, 1900, Maggie Robinson and F. M. Robinson, her husband, leased to Mallory Bros. & Stewart in consideration of twenty-two dollars and twenty-five cents in hand paid, for oil and gas purposes a tract of 88 acres of land, more or less, on the waters of Rowels Run, or Oil Rock, said lease to remain in force for the term of three years from its date and as long thereafter as oil or gas or either of them should be produced therefrom by the lessees. The lessees to deliver to the credit of the lessors one-eighth of all oil produced and saved from the premises, and one hundred dollars per year for the gas from each gas well the product from which should be marketed and used off the premises; and the lease contained the following: "Provided, however, that this lease shall become null and void, and all

rights hereunder shall cease and determine unless a well shall be completed on the said premises within three months from the date hereof, or unless the lessee shall pay at the rate of twenty-two dollars and twenty-five cents quarterly in advance for each additional three months such completion is delayed from the time above mentioned for the completion of such well until a well is completed; and it is agreed that the completion of such well shall be and operate as a full liquidation of all rental under this provision during the remainedr of the term of this lease. Such payments may be direct to the lessor or deposited to their credit in the Wirt County Bank." And also the further provision: "It is agreed that the second party shall have the privilege of using sufficient water from the premises to run all necessary machinery, and at any time to remove all machinery and fixtures placed on said premises, and further shall have the right at any time to surrender this lease to first parties for cancellation, after which all payments and liabilities to accrue under and by virtue of its terms, shall cease and determine, and this lease become absolutely null and void." Which lease was duly executed and acknowledged by the lessors and recorded in the clerk's office of Wirt County Court on the 28th day of May, 1901, but not signed by the lessees. Under this lease the lessees deposited in the Wirt County Bank, to the credit of the lessors payments of twenty-two dollars and twenty-five cents each, at the following dates: September 20, 1900; December 19, 1900; 22d day of March, 1901, and 6th day of June, 1901.

On the 29th of June, 1901, the said lessors directed a letter to J. W. Graham, agent for Mallory Bros. & Stewart notifying him and requesting him to notify Mallory Bros. that they had "Elected and decided to treat the lease held by Mallory Bros. & Stewart on our property on Oil Rock forfeited, and have released it to other parties and that we will not receive any further payments under the lease." By deed dated July 1, 1901, the said Maggie Robinson and F. M. Robinson, her husband leased the same property in consideration of one hundred and twenty-five dollars cash paid in hand and the covenants made by the lessee to F. J. Friend. Which lease was for the term of one year and as long thereafter as oil or gas or either of them should be produced therefrom by the lessee and his successors or assigns. On the 23d day of July, 1901, said F. J.

Friend presented his bill to the judge of the circuit court of Wirt County, praying for an injunction to enjoin and restrain the lessees, Mallory Bros. & Stewart, their agents, employes and servants from going upon the said property for the purpose of operating the same for oil and gas and from removing any machinery upon said premises or erecting derricks and other structures thereon, or in any way taking possession of said property under their said lease of March 23, 1900, and praying that said lease might be canceled, annulled, and removed as a cloud from the title of said Friend. Which injunction was granted as prayed for. And on the same day Mallory Bros. & Stewart presented their bill to same judge praying for an injunction restraining and prohibiting F. J. Friend, Maggie Robinson and F. M. Robinson, their agents, servants and employes from drilling or operating for oil or gas on any part of the said tract of land and from setting up or claiming under any lease or pretended paper executed by the said Robinsons or either of them to the said Friend, and from interfering with the plaintiffs or any of them in operating and developing and drilling for oil or gas on any part of said premises according to the terms of their lease of March 23, 1900, and that said Friend, be required to produce and show to the court any paper or instrument under which he claimed any lease-hold upon the said tract of land; and that the same be canceled and held to be annulled and void as a cloud upon the title of plaintiffs and that the Robinsons be enjoined from executing any other lease for oil or gas on said land during the existence of plaintiffs' lease and for general relief. Which injunction was also awarded. On the 6th day of August, by agreement of counsel a notice of motions thereof being waived by the respective parties the two causes came on to be heard in vacation before the judge of said court upon motions to dissolve each of said injunctions awarded on the said 23d day of July upon bills of complaint filed by them respectively, which motions were first set for hearing on the 30th day of July and continued for hearing until the 31st of July, and the defendants, Mallory Bros. & Stewart, on said 30th of July tendered and filed their demurrer to the bill of F. J. Friend and tendered their answer to be read and considered as an affidavit on their said motion, and in further support of their motion tendered and filed the several

affidavits of G. W. Roberts, Abram Pearson, John L. Mullen, Alexander Morrow, J. W. Graham and F. T. Lockhart. And the plaintiff, F. J. Friend in opposition to said motion on same day tendered and filed the affidavits of F. M. Robinson and Maggie Robinson, and on the 31st day of July with the leave of the court filed additional affidavits of G. W. Roberts, J. O. Bank, J. W. Bell and the second affidavit of F. M. Robinson, and the defendants Mallory Bros. & Stewart filed the additional affidavit of J. W. Graham, and on the 30th of July the defendant, F. J. Friend tendered and filed his demurrer to the bill of Mallory Bros. & Stewart against him and others and also his answer to be treated as an affidavit upon motion to dissolve the injunction awarded the same. Mallory Bros. & Stewart, and the defendants, Maggie Robinson and F. M. Robinson, also tendered and filed their joint and several answer to the said complaint against them to be treated as an affidavit upon motion to dissolve; and in support of said motion the said defendants tendered and filed the same affidavits filed by them in the first mentioned cause and in opposition thereto.

The plaintiffs in said last mentioned cause tendered and filed the same affidavits filed by them in support of their motion to dissolve the injunction against them and the filing of each of said sets of affidavits by each of the parties in support of, and in opposition to said motions was objected to by the other parties; and after duly considering said motions the court sustained the motion of defendants, Mallory Bros. & Stewart to dissolve the injunction awarded to Friend against Mallory Bros. & Stewart in the first of said causes, and overruled the motion to dissolve the injunction in the second of said causes and continued the injunction in full force until the further order of the court. From which decree dissolving the injunction awarded to the said Friend and refusing to dissolve the injunction awarded to said Mallory Bros. & Stewart the said Maggie Robinson, F. M. Robinson and F. J. Friend appealed to this Court. It is insisted by appellants that the lease of March 23, 1900, being at the will of the lessees none of its terms and provisions could bind the lessors for the full term, depriving them of their power to determine their will; and it is claimed also that the consideration of twenty-two dollars and twenty-five cents paid by the lessees to the lessors was a rental for the first three

months from the date of the lease, within which time the first well should be completed. Wherever or however the amount of the consideration paid in hand at the time of execution of the lease was to be applied, it is admitted that all rental was paid up to the 23d day of June, 1901, without the application of the deposit of twenty-two dollars and twenty-five cents, made by the lessees on the 6th day of June, 1901. The appellant, Maggie Robinson, the owner of the land admits this fact in her affidavit dated July 28, 1901, filed in support of her motion to dissolve the injunction of Mallory Bros. & Stewart. In her said affidavit she says: "That she has received no rental or commutation money from said Mallory Bros. & Stewart since *that which paid to June 23, 1901.* That she received no notice from the Wirt County Bank that any money had been deposited there for her and F. M. Robinson by Mallory Bros. & Stewart." This affidavit was made to show deposit made by the lessees, Mallory Bros. & Stewart to the credit of lessors on the sixth of June, was not accepted by them and admits that all rents were paid up to the 23d of June, 1901, without the payment made June 6, which if applied, paid to the 23d of September, 1901. It is also admitted in the answer of the Robinsons, treated as affidavit at the hearing cf the motions to dissolve, that they had received the rental or commutation money mentioned in plaintiffs' bill up to and including that which was paid on the 23d of March, 1901, which paid to the 23d of June, 1901; but claimed that they received the same under protest and solemn promise made by the lessees through their agent, J. W. Graham, that the lessees intended to drill upon said property right away and that they notified him and the lessee through him that unless they proceeded to drill and operate the territory that they would receive no further rental or commutation money, but would take such steps as they might be advised were necessray to protect their interest. This, the said J. W. Graham in an affidavit filed and used on the hearing of the motions to dissolve, contradicted. He says "That at no time prior to the release of said farm to F. J. Friend did the said F. M. Robinson or Maggie Robinson notify him that they were dissatisfied with the lease given to Mollory Bros. & Stewart and intended to try to terminate the same, nor did they notify him that they would refuse rentals." Said Robinsons also admitted in said answer that a short time before the

23d of June, F. M. Robinson received a notice from the Wirt County Bank, or its cashier that a draft calling for $22.25 had been deposited in said bank and was subject to his order, but there was no notice given to him of who had diposited the said draft or what it was for; that they did not receive the said draft nor was there any money tendered or offered by the bank; that neither Mallory Bros. & Stewart nor their agent ever tendered to them the sum of twenty-two dollars and twenty-five cents in lawful money of the United States either on the 23d day of June, 1901, or prior thereto: and further denied that the Wirt County Bank was their agent for the purpose of receiving said draft deposited there by said lessees, and that even if it was so deposited, it was not a compliance with even the one-sided condition of the lease bearing date 23d of March; that the terms of the lease contemplated lawful money of the United States and that the draft was not lawful money; and denied that the draft was ever passed to their credit by the bank. It is shown by the affidavit of G. W. Roberts, cashier of the bank that on the 6th day of June, 1901, a deposit of that amount, twenty-two dollars and twenty-five cents was made by the lessees to the credit of the said Robinsons. The terms of the lease from Robinsons clearly make the Wirt County Bank the agent of the lessors to receive such payments; the lease providing that "Such payments may be direct to the lessors or deposited to their credit in the Wirt County Bank." Whether the deposit was made in lawful money or in checks or drafts is not material so the amount was placed to their credit in the bank. *Yoke* v. *Shay,* 47 W. Va. 40, (34 S. E. 748). The defendant, Friend, in his answer to bill of Mallory Bros. & Stewart also raises the question of the legality of payment into the bank and insists that the same should have been paid in lawful money. Said Roberts, cashier, a few days afterwards made a further affidavit dated, 31st of July, in which he states, that said draft was not placed to the credit of said Robinsons by entering their names on the balance book nor otherwise except in cashier's check account, but a memorandum of the matter was made on a deposit slip which was placed in the cashier's check account and was carried in that way;" that neither of the Robinsons had any account in the said Wirt County bank at that time, and they had never had a joint account opened in said bank to

them except as stated; and affiant desired to qualify his former affidavit accordingly. The lessees, Mallory Bros. & Stewart, were not responsible for the manner in which the Wirt County Bank kept its accounts nor was it material, or a matter of which the lessors could complain as to whether a deposit was made to their credit in money, draft or otherwise so they had the benefit of the credit and could receive the money upon it. It is claimed by the Robinsons that the lease to Mallory Bros. & Stewart of March 23, was a fraud upon them, that they believed they were only leasing for one year when the lease was made to read for three years and that they and their agent, G. W. Graham, had been guilty of fraud, deception and sharp practice from the first moment the matter of lease of their land was mentioned to them by said Graham; that said lease upon its face was unfair, unjust and inequitable, that the said lease did not contain a single promise or condition that could be enforced in any court against the lessees and that with a fraudulent design the lessors had failed, and refused to sign the lease and that they put the same upon record without having been signed by them or their agent. It is insisted by appellants that the lease to Friend terminated the lease to Mallory Bros. & Stewart, under the authority of *Guffey* v. *Hukill,* 34 W. Va. 49; *The Eclipse Oil Co. Case,* 47 W. Va. 84, (34 S. E. 929), and other cases cited. In the first case, Guffey and Hukill, the prior lease contained a provision that the lessee should commence operations within nine months from and after the execution of the lease or to thereafter pay to the parties of the first part, a certain rental per month until work was commenced and a failure on the part of the lessee to comply with either one or the other of the said conditions should work absolute forfeiture of the lease. The lessee complying with neither of the said terms the lessor leased to a third party. It was there held that the execution of the second lease completed the forfeiture of the first. In the *Eclipse Oil Co. Case,* it was held that, "An executory gas and oil lease which provides for its surrender at any time without payment of rent or fulfillment of any of its covenants on the part of the lessee creates a mere right of entry at will, which may be terminated by the lessor at any time before it is executed by the lessee." And it is further held: "The execution of any lease to other lessees and possession thereunder render

such prior executory lease invalid." That was a case in which nothing was done under the prior lease either in the way of exploring for oil or the payment of rent. In the *Eclipse Case* the lease which was forfeited contained this provision: "And it is further agreed that the second party, their heirs or assigns, shall have the right at any time to surrender up this lease and be released from all moneys due and conditions unfulfilled; then and from that time this lease and agreement shall be null and void and no longer binding on either party." It is said in the opinion of the court: "This clause apparently destroys this lease or renders it invalid, at least till some consideration has passed from the lessee to the lessor." The case at bar is different from the cases cited, in this, the lessee paid the stipulated rent which was to be paid quarterly in advance for each three months that the completion of a well was delayed. And it is not competent for the lessors to terminate the lease by the execution of another lease during any quarter within which the rental was paid as provided in the lease, proposed to be terminated. The payment of the rental to be due June 23, 1901, was paid prior to that date into the bank designated in the lease as the agent to receive it and the lessors notified the lessees on the 29th of June, six days after the payment was due, of their purpose to terminate the lease. The rental mentioned in the lease, one dollar per acre, per annum is a substantial consideration and the affidavits of several parties filed at the hearing of the motions for dissolution of the injunctions not only show that the lease was fully read over to the lessors but they show that the consideration of the rent to be paid quarterly in advance was as much an inducement to the lessors to lease at the time of execution of the lease as the development of their property, if not really the controling consideration. At that time no producing wells had been drilled near them and it was problematical as to whethwer this was oil and gas territory. E. T. Lockhart, the attorney who drew up the lease between the parties said that in his office and in his presence the said F. M. Robinson and J. W. Graham fully concluded an agreement for the terms of the lease; that it was then and there reduced to writing in his presence by Graham at the request of Robinson and that after it was so written Lockhart read the same to Robinson who signed it and expressed himself as satis-

fied with its terms and conditions; that affiant and Robinson immediately went to Robinson's house and that he at the request of Robinson read the lease to Robinson's wife and she signed it and they both acknowledged it before Lockhart; that the same was fully explained to them before they signed it and acknowledged it; that on the same day Robinson told affiant that he had got his cash and on several different occasions after making the lease Robinson told him the rentals were being regularly paid and on many subsequent occasions after the lease was made expressed himself as being entirely satisfied with its terms and conditions; that he was getting rentals regularly and that was all he cared for, and that he understood from Robinson's conversations that he leased more for the rent than any other purpose. J. W. Graham says in his affidavit that when he first proposed to take a lease from Robinson on his land and drill a well that Robinson replied: "If I lease I want the cash"; that Graham then proposed to give Robinson fifty cents per acre a year rental for a lease of the land when Robinson said: "You can have that farm for one dollar an acre, payable quarterly in advance." He asked Robinson how long a term he would give and Robinson said "three years." Indeed it would seem from the weight of the affidavits filed, that at the time of the making of the lease to Mallory Bros & Stewart, the quarterly rental was the principal consideration inducing the making of the lease by the lessors. It is insisted by appellants that the failure of the lessees to sign the lease destroyed its mutuality. In *Mononga Coal & Coke Co.* v. *Fleming,* 42 W. Va. 538, the contract of sale of coal under the contract of the vendor containing agreements of vendee as to the payment of the purchase money, and only signed by the vendor, is held to be binding on the seller and was not required to be signed by the buyer who had accepted it; and it is held that no writing signed by the vendee was required to prove the vendee's obligation to pay the consideration price or to make it binding upon him. In 4 Am. & Eng. Dec. in Eq. page 349, it is said, "One who receives the benefit of a contract cannot deny that he made it or assert its invalidity whether on the ground that it was *ultra vires* or that it was made by an unauthorized agent or that it was not executed as required by law; nor on any other ground." In *Boyd* v. *Brown,* 47 W. Va. 238, it is held: "Lack of

mutuality is no defence even in a suit for specific performance where the party not bound thereby has performed all the conditions of the contract and brought himself clearly within the terms thereof." 2 Beach Cont. sec. 889 and cases there cited; 7 Am. & E. 2d Ed. 114; *Harness* v. *Oil Co.,* 49 W. Va. 232, (38 S. E. 668).

I see no error in the decree and the same is affirmed.

*Affirmed.*