## HANCOCK ET AL. v. DIAMOND PLATE GLASS COMPANY ET AL.

[No. 20,244.   Filed February 16, 1904.]

CONTRACTS.—*Exclusive Right to Explore for Natural Gas.*—*Forfeiture of Contract.*—*Contract not a Tenancy from Year to Year.*—A landowner entered into a contract with a corporation by the terms of which the latter was to have the exclusive right to bore for natural gas on the former's lands, and was to pay a certain sum annually until it had put down a gas-well; and it was stipulated that the contract should be terminated whenever natural gas ceased to be used generally for manufacturing purposes or "whenever the second party [the corporation], or their assigns, shall fail to pay or tender the rental price, herein agreed upon, within sixty days of the date of its becoming due." *Held*, that the contract did not create a tenancy from year to year, and that the failure on the part of the corporation to pay the annual "rental price" did not terminate the contract, but merely gave the landowner the right to do so.

From Howard Superior Court; *Hiram Brownlee*, Judge.

Action by Anna E. Hancock and husband against the Diamond Plate Glass Company and others.   From a judgment for defendants, plaintiffs appeal.   Transferred from the Appellate Court, under §1337u Burns 1901. *Reversed.*

*B. C. Moon*, for appellants.
*Milton Bell*, *W. C. Purdum*, *J. C. Blacklidge*, *C. C. Shirley* and *Conrad Wolf*, for appellees.

HADLEY, J.—Contract for exploring for natural gas. Suit to recover stipulated sum for delay in putting down a well.   On June 18, 1891, appellants and appellee Diamond Plate Glass Company entered into a written contract whereby appellants "granted and contracted" to said

appellee and its assigns twenty feet square of a certain described tract of forty acres, to be located by mutual agreement, for the purpose and with the exclusive right of putting down a gas-well thereon, with the right of ingress and egress, and to lay pipe and conduct gas therefrom. As a consideration for the grant the gas company agreed to deliver to appellants, in the highway nearest their dwelling-house on said forty acres, free of charge during the continuance of the contract, whatever amount of natural gas was necessary for domestic use in said dwelling, and in addition thereto to pay appellants on September 1 of each year $100 for each producing gas-well drilled on the premises, and, until the company should put down a gas-well on said premises, the company agreed to pay appellants on September 1 of each year $20 at the office of the company, in Kokomo. Appellants on their part further "covenanted and agreed," for themselves, their heirs, executors, and assigns, "not to drill, or suffer or permit others to drill, or put down, any other gas-well, or wells, on any part of said entire forty-acre tract of land during the continuance of this contract." It was further covenanted that "this contract shall be deemed to commence at, and run from the date of signing hereof, and shall be deemed to have terminated whenever natural gas ceases to be used generally for manufacturing purposes, or whenever the second party [the gas company], or their assigns, shall fail to pay or tender the rental price herein agreed upon within sixty days of the date of its becoming due. And in the event of the termination hereof, for any cause, all rights and liabilities hereunder shall cease and terminate."

It will be observed that there was no limit to the duration of the contract, except "when natural gas ceases to be used generally for manufacturing purposes," and that no time was fixed for the commencement or completion of a gas-well. The Diamond Plate Glass Company assigned said

contract to the Pittsburg Plate Glass Company, which assigned the same to appellee the Logansport & Wabash Valley Gas Company; each assignee, in turn, agreeing to perform all the covenants of the assignor. No gas-well was ever put down or commenced on said premises, and none has been demanded or requested by appellants, though they were always ready and willing for the same to be done. No possession of the premises was ever taken. Natural gas was furnished appellants free of charge, under the contract, from November 1, 1891, to December 25, 1900, when the supply was cut off by appellee Logansport & Wabash Valley Gas Company. The annual sum of $20 to be paid during the delay in sinking a well was paid, according to the contract, on each September 1, from 1891 to 1895, inclusive, and sued for and recovered by appellants for the year 1896. Natural gas has been all the time since the execution of said contract, and still is, used generally for manufacturing purposes. There has been no forfeiture, or surrender, or termination of the contract, further than may be implied by the failure of appellees to pay the annual sum of $20 since September 1, 1896, and the cutting off of appellants' free gas on December 25, 1900. The complaint founded on the written contract was filed September 19, 1902, and seeks to recover the stipulated annual sum of $20, for the several years from September 1, 1897, to September 1, 1902, inclusive, and damages in the sum of $75 for failure to furnish free gas from December 25, 1900, to the commencement of the suit. The contract and all the foregoing facts are fully and specifically set forth in the complaint. Appellees' demurrer to the complaint for insufficiency of facts was sustained, and, appellants refusing to amend, judgment was rendered against them for costs.

The only question presented by the appeal is the sufficiency of the complaint. Is it sufficient to constitute a cause of action? It seems to us, from the nature of the

action—it being a suit for damages for breach of a covenant to pay—and facts averred in the complaint, that the name of the contract sued on, or the class to which it belongs, or whether it creates a lease, a license, or an easement, or either, is wholly immaterial, and will not warrant discussion, though argued at length by the parties. The subject-matter is one concerning which the parties might lawfully contract, and, having contracted, our simple duty, within the limits of settled principles, is to see that it is kept in accordance with the mutual understanding and agreement of the parties at the time it was made.

What, then, are the terms of the agreement? It will be observed that the contract clearly provides that it shall continue in force as long as gas is generally used for manufacturing purposes, be that one or forty years. No time is agreed upon for the commencement or the completion of a well, and no express provision that one shall ever be constructed; but it is made very plain that no one but the glass company shall have the right to put down a well anywhere on the forty acres "during the continuance of the contract," or so long as natural gas shall be used generally for manufacturing purposes. In other words, under the contract the company, in unmistakable terms, has the exclusive right to take and control the output of gas from appellants' forty acres during the period of supply. It may enter the premises to-morrow, sink a well, and extract through it the gas from under appellants' land, or, if it prefers, with appellants' acquiescence, it may postpone an entry, exclude others from the premises, save the expense of making a well, and draw the gas from under the land through its well, on other premises, on the other side of the road. So far as appellants are concerned, by the contract they surrendered to the glass company, for an agreed consideration, all the right and dominion they were able to bestow to all the gas underlying their forty acres of land, the company to take its chance on the quantity, and pursue

its own method in mining it, within the limits of the contract.

On the part of the company, it agreed, in equally certain terms, to give appellants for the valuable concession, a supply of free gas for domestic use, and pay them $20 in cash, not for one year, but for every year that might elapse before it made a well on the premises, and thereafter $100 per annum for each well. As we have seen, the company has not bound itself to construct a gas-well on appellants' land within any specified time; but so long as natural gas continues in general use for manufacturing purposes it has bound itself to pay the annual sum of $20 until it does make such a well. The parties themselves have agreed upon the thing to be done, and the exact amount to be paid when done, and for the delay in the doing of it, and we can not look beyond the agreement.

It is not to be supposed for a moment that either party understood when the contract was entered into that the company was to have these valuable and continuing rights without rendering to appellants what was deemed to be a coequal, valuable, continuing consideration. Nor is it to be doubted that it was the mutual understanding that, as long as the company excluded others from mining the gas on appellants' land, it should be liable for the sum it agreed to pay for the right to do so. We must so view the agreement, because in accord with the plain, simple meaning of its terms, and in harmony with a proper sense of fairness and natural justice.

Is the contract still running? This question must be answered in the affirmative, unless it appears that it has expired by limitation, or been surrendered, forfeited, or otherwise terminated. It has not expired by limitation, for we are informed by the complaint that natural gas has been, all the time since the making of the contract, and still is, generally used for manufacturing purposes.

It has not been surrendered. The complaint avers that

no surrender has been made, and affirmatively shows that appellants, on their part, demanded, sued for, and recovered the first annual payment defaulted (1896), and are now in court suing for all other due and unpaid instalments, and that appellee, on its part, continued to make voluntary payments to 1896, and to supply appellants with the stipulated free gas from the beginning of the contract to December 25, 1900. There is no pretense on the part of appellee that anything transpired on December 25, 1900, to terminate the contract, beyond the shutting off of appellants' gas on that day; and this continued part performance, in the absence of any explanation thereof, is of itself sufficient acknowledgment that the contract was in force to that time.

The complaint shows no forfeiture of the contract. It is averred that appellants have performed all the conditions on their part to be performed. But appellee claims that it terminated the contract in 1896, by failing for more than sixty days to pay the stipulated annual $20, called "rent," and relies upon that part of the contract which is expressed in these words: "This contract shall be deemed to commence at, and run from the date of signing hereof, and shall be deemed to have terminated whenever natural gas ceases to be used generally for manufacturing purposes, or whenever the second party [the glass company], its heirs, or assigns, shall fail to pay or tender the rental price herein agreed upon within sixty days of the date of its becoming due. And in the event of the termination hereof, for any cause, all rights and liabilities hereunder shall cease and terminate."

The promise to pay for what it received from the appellants was the covenant of the appellee, made for the sole benefit of appellants, and the manifest absurdity of the latter part of the provision makes it plain that the contract can not be enforced according to its letter. A promise to pay can not be fulfilled by a failure to pay. Perform-

ance can not be effected by nonperformance, nor a covenant satisfied by sixty days' default. A similar provision found in many such instruments have led courts to look critically after the real intent of the parties; and in cases like this, and where it is not expressly provided that "either party" or that the covenantor shall have the right, it has been uniformly held, so far as we have observed, that the right of forfeiture may be exercised by the covenantee, and not by the covenantor. Such a provision is made for the security of the one who is to be benefited by a fulfillment of the promise, and not for the benefit of the one whose interest lies in nonfulfillment. Such contracts are construed to mean that upon failure of the operator to pay the well rental, or the promised sum for delay in beginning operations, the landowner may elect to put an end to the contract and recover what is due him, or he may waive his right of forfeiture and allow the contract to run, and enforce payments as provided in that instrument. An operator will not be allowed to set up his own default or wrong in discharge of his obligation to a landowner to pay for what he has bought.

There is no doubt but an operator may be relieved of his obligation to put down a well, or to pay the sum promised for his failure, upon such terms as may be agreed upon in the contract, either of benefit to the landowner, or of inconvenience to himself; but a naked default or nonperformance, such as is set up in this case, can not be held to discharge his obligation. *Leatherman* v. *Oliver,* 151 Pa. St. 646, 25 Atl. 309; *Cochran* v. *Pew,* 159 Pa. St. 184, 28 Atl. 219; *Woodland Oil Co.* v. *Crawford,* 55 Ohio St. 161, 176, 44 N. E. 1093, 34 L. R. A. 62; *Smith* v. *Miller,* 49 N. J. L. 521, 13 Atl. 39; *Jackson* v. *O'Hara,* 183 Pa. St. 233, 38 Atl. 624; *Ahrns* v. *Chartiers Valley Gas Co.,* 188 Pa. St. 249, 41 Atl. 739; *Edmonds* v. *Mounsey,* 15 Ind. App. 399; *Simpson* v. *Pittsburgh Plate Glass Co.,* 28 Ind. App. 343; Thornton, Oil & Gas, §§149, 151,

and authorities collated; Barringer & Adams, Mines, 148.

We are unable to see how the principles pertaining to the relation of landlord and tenant are applicable to such a contract as the one before us, either where possession has or has not been taken under the contract. It seems to have been held in *Diamond Plate Glass Co.* v. *Curless,* 22 Ind. App. 346, and *Diamond Plate Glass Co.* v. *Echelbarger,* 24 Ind. App. 124, that similar instruments, granting the right to explore for and remove gas or oil for an indefinite period, are, in effect, leases creating tenancies from year to year, under §7089 Burns 1901, which may be terminated by the tenant at the end of any year, without notice. But we can not accept this view as correct. While a contract providing for an entry and removal of gas or oil from the premises is, perhaps, more than a license, we are unable to believe that it constitutes such a tenancy as is contemplated by §§7089, 7090 Burns 1901. It must be agreed that such a contract is equally binding on the parties to it. Suppose, for instance, that, under such a contract as this one, the operator shall enter and drill in a well which yields a much greater volume of gas, and is therefore much more valuable than was anticipated by the landowner when he made the bargain; will anyone contend that the latter may avoid his contract and eject the operator by a three-months' notice to quit before the end of the first year, under §7090, *supra?* And yet this is precisely what the doctrine leads to. There appears from the complaint no good reason why the contract should not be enforced against appellees.

Judgment reversed, with instructions to overrule the demurrer to the complaint.