## LaFayette Gas Company v. Kelsay.

[No. 20,521.   Filed April 28, 1905.]

1. **Landlord and Tenant.**—*Gas and Oil Lease.*—*Right of Forfeiture for Nonperformance.*—Where the landowner leases his lands to a company for a certain time in which to sink a well, and if gas or oil is found in paying quantities such lease to extend so long as gas or oil is produced in paying quantities, and if no well is drilled within such time, then such lease to continue upon the company's payment of a certain sum semiannually, such landowner can not terminate such contract after the period for sinking the well without giving such company notice and a reasonable time in which to sink a well. p. 568.

2. **Payment.**—*Option.*—*Exercise.*—Where by contract a company had the option of payment either to the lessor or to a bank to the lessor's credit, a payment to the bank constitutes a legal payment, even though made by draft or check, provided the lessor is credited on the books with the sum due. p. 569.

3. **Landlord and Tenant.**—*Lease.*—*Forfeiture.*—The landlord is not in a position to demand a forfeiture of a lease where he has not given the lessee a reasonable time and notice to perform the lease, but has arbitrarily terminated such lease and forbade the lessee to enter the premises under the penalties of being a trespasser. p. 569.

From Grant Circuit Court; *H. J. Paulus,* Judge.

Action by Albert W. Kelsay against the LaFayette Gas Company. From a decree for plaintiff, defendant appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Reversed.*

*Stuart, Hammond & Simms* and *Brownlee & Browne,* for appellant.

*Steele & Dicken* and *Albert C. Carver,* for appellee.

Jordan, J.—Appellee commenced this action against appellant to quiet his title to eighty acres of land situated in Grant county, Indiana, and to secure the cancelation of a certain contract or lease whereby he granted to appellant the right to explore said real estate for oil and gas, etc.

The complaint upon which the cause was tried consists of two paragraphs, which for the purpose of this appeal

we will denominate first and second. The first is a general paragraph to quiet title under the statute. The second, after alleging ownership of the real estate in question, sets up the facts more specifically, and incorporates therein the contract in controversy. It charges, among other things, that the defendant never entered into the possession of the land described, nor performed any act or deed mentioned in the contract. It is alleged that the contract in question was to continue for a period of six months from the time of its execution, April 9, 1897, and the payments thereunder necessary to continue it in force thereafter were to be made in advance on the 1st day of January and the 1st day of July of each year, or within ten days of these respective dates. It is charged that the plaintiff in July, 1902, notified the defendant that he would not continue the contract in force any longer, and declined to accept any money for the purpose of continuing it in force. In December, 1902, he likewise notified the defendant that he would not continue the contract or agreement in force, and declined to accept any money from the defendant necessary for that purpose. In January, 1903, he renewed the same notice, and declined to accept from the defendant any money necessary to continue the contract in force. It is alleged that the contract in question is of record in the recorder's office of Grant county, Indiana, and is a cloud on plaintiff's title, etc., and he demands that his title be quieted.

Appellant's answer to the complaint consisted of the general denial, and other paragraphs setting up affirmative matter. Under the issues as joined the cause was tried by the court, which resulted in a decision and judgment in favor of plaintiff to the effect that the defendant had failed to comply with the terms of said contract, and that it had not performed the covenants which it was required to perform, and by reason thereof had forfeited its rights under the contract in suit. The contract by the judgment was

declared terminated and canceled, and the plaintiff's title
was quieted as against all claims of the defendant.  De-
fendant's motion for a new trial, assigning as reasons there-
for (1) that the decision of the court is not sustained by
sufficient evidence, (2) and is contrary to law, was over-
ruled, and exceptions properly reserved.

The only error discussed by appellant for a reversal is
the alleged error of the court in denying its motion for a
new trial.

It is exhibited by the bill of exceptions containing the
evidence that upon the trial it was admitted and agreed by
the parties that the plaintiff (appellee herein) was the
owner in fee simple of the real estate described in his com-
plaint, that he was in the possession thereof, and that the
defendant claims under the contract set out in the second
paragraph of the complaint.  This contract appears to have
been executed by the parties to this appeal on April 9,
1897.  Appellee thereunder granted to appellant gas com-
pany, its successors and assigns, the exclusive right to drill
and operate for petroleum and gas upon the real estate
described, situated in Grant county, Indiana, and the
further right to transport said products through and over
said lands, "together with the right to lay, maintain and
operate its main pipe-line, and other lines of pipe and tele-
phone, as, in the judgment of the party of the second part
[appellant], may become necessary or proper for the pur-
pose of said second party; the right to excavate for water,
and to use sufficient water to run necessary engines to prose-
cute said business, and the right of way over said premises,
and the right to erect, maintain and operate such buildings
and machinery upon such lands as may be necessary for
the full enjoyment of all the rights herein granted."  The
further right to remove buildings before or after the expira-
tion of the contract was granted to said second party (appel-
lant herein).  The second party, its successors and assigns,
was to have and hold said premises for said purposes only

during the full term of six months from the date of the contract, "and as much longer as oil or gas shall be found in sufficient quantity to justify marketing the same in the judgment of the party of the second part [appellant], or the sums agreed to be paid herein are paid." In consideration of the rights so granted second party (appellant) agreed to pay to first party (appellee) a compensation at the rate of fifty cents per acre per annum for said land until the completion thereon of a well, which well, as stipulated, was to be drilled within two years from the date of the contract. The second party "further agrees that from and after the completion of a well on said premises which shall in its opinion produce gas in sufficient quantity to justify said second party in marketing such gas, it will pay to the first party compensation at the rate of $100 per annum for each well on said land so long as in the opinion of the second party said well produces a marketable quantity of gas." Said payments were to become due semi-annually on the 1st day of January and the 1st day of July, and were to be paid within ten days after the maturity thereof, either direct to appellee, or "by depositing the same in the Fairmount Bank at Fairmount, subject to the order of the first party." It was further stipulated and provided that "in case the well or wells are not drilled or utilized as herein provided, then, upon the payment of the well rental herein stipulated to be paid by the second party, this agreement shall continue and shall have the same force and effect as though the well or wells had been drilled and utilized." The first party was to have the full one-sixth part of all the petroleum or rock-oil found or produced in marketable quantities on the premises. The only express provisions in the contract in question in regard to the termination thereof are as follows: "If the party of the second part fails to comply with the terms and conditions herein, or fails to pay the compensation herein stipulated to be paid, then in consideration of the payment by the party

of the second part to the party of the first part of the sum of $5 and the release of this lease, the rights of both parties hereunder shall cease and determine, except, that the second party shall have the right, without paying any further consideration therefor, to maintain, operate and repair and replace or to remove any pipe-lines laid on said premises."

The evidence given at the trial discloses the following: Appellant failed to drill any well or wells on the land in controversy, but continued to make payments under the provisions of the contract necessary to continue it in force to July, 1902, all of which payments made prior to that time appellee accepted. The well rental which matured on July 1, 1902, was paid by appellant's making a deposit of the amount due in the bank at Fairmount, subject to the order of appellee, by the means of a bank check, which the bank received, and credited on its books, the amount thereof to appellee, of which payment the bank about July 15, 1902, notified appellee, but he declined to receive or accept the money. As shown, sometime in July, 1902, he notified the bank not to receive any more money for him of appellant, and about the same date for the first time notified appellant company that he would not accept the instalment of July 1, 1902, and further informed it that he would receive no payments to continue the contract or lease in force, but would proceed to quiet his title to the premises. Sometime after July, 1902—the exact time not being shown by the evidence, but prior to January 1, 1903 —an agent of appellant came to see appellee to ascertain why the latter desired to discontinue the lease, and in a conversation with appellee the agent stated that he was thinking about setting stakes on the land, but appellee notified him not to do so, for, if he did, he would be a trespasser. Sometime in December, 1902, or January, 1903, prior to the commencement of this action, he was informed, through an agent of the gas company, that he had some money for him, but he notified the agent that he would not

receive it. Appellee testified on the trial that he had decided in June, 1902, to terminate the lease, and intended thereafter to receive no further payment of rentals, either in lawful money, checks or "anything else." After the time when he first notified appellant of his purpose to terminate the contract, he continued, as it appears, to assert that the contract or lease was terminated, and that he intended to quiet his title to the premises. At no time after declining to receive the instalment maturing on July 1, 1902, did he in any manner request appellant, or indicate his desire for it to proceed, to explore the lands by drilling a well or wells thereon as provided by the lease, but on the contrary notified it that he had terminated the lease and would proceed to quiet his title to the land in question, and accordingly on January 21, 1903, he commenced this action.

1. Appellee apparently construed the lease or contract as awarding him the right to refuse to accept payments of the well rentals, and thereafter arbitrarily to terminate the rights of appellant under said contract, and proceed to quiet his title to the premises in controversy, without allowing appellant a reasonable time to explore or develop after it had been notified of his purpose to decline in the future all payments of well rentals. This is evident from the facts alleged by him in the second paragraph of his complaint, and further by his acts and declarations as shown by the evidence. Such a construction of the lease we can not sanction. Had he in June, 1902, when he first decided to terminate the lease, notified or warned appellant that in the future he would decline to accept payments of the stipulated rentals, and had appellant thereafter, under the circumstances, failed to explore the premises within a reasonable time, in order to discover the existence or nonexistence of gas or oil thereunder, then within the rule asserted in *Consumers Gas Trust Co.* v. *Littler* (1904), 162 Ind. 320, *Consumers Gas Trust Co.* v. *Crystal Window Glass Co.* (1904), 163 Ind. 190, and *Consumers Gas Trust*

*Co.* v. *Worth* (1904), 163 Ind. 141, a different question would be presented.

2. By the provisions of the contract the rentals were to be due on the 1st of January and the 1st of July of each year, and it was stipulated that payment thereof might be made within ten days after maturity, either direct to appellee, or by depositing the same in the Fairmount Bank at Fairmount, subject to his order. The payment of the July instalment of rent appears to have been made within the time prescribed, by appellant's depositing the amount thereof in the bank designated to the credit and order of appellee; hence it was not material whether the deposit was made in lawful money, or in checks or drafts, as it was accepted by the bank, and the amount thereof placed to the credit of appellee, subject to his order, thereby enabling him to draw the money from the bank when he desired. *Yoke* v. *Shay* (1899), 47 W. Va. 40, 34 S. E. 748; *Friend* v. *Mallory* (1902), 52 W. Va. 53, 43 S. E. 114. Depositing the money in the bank as a payment under the provisions of the contract, without any prior notice by appellee to appellant that the former would decline to accept it, was, under the circumstances, in a legal sense, a payment to appellee, and the effect thereof, within the holding in *Consumers Gas Trust Co.* v. *Littler, supra, Consumers Gas Trust Co.* v. *Crystal Window Glass Co., supra, Consumers Gas Trust Co.* v. *Worth, supra,* would be to excuse appellant from a performance of the condition to explore the premises within the period of time ensuing between July 1, 1902, and January 1, 1903, the time at which the next payment would mature.

3. Whether or not the time which elapsed between January 1, 1903, and the 21st day of the same month, when this action was commenced, was a reasonable limit in which appellant could have made the necessary explorations or developments of the premises, is, under the circumstances in this case, not a question presented for our decision, for,

as shown, appellee, after the payment of the July instalment of rent, instead of notifying appellant that he would decline to receive or accept any payments of rentals in the future, and that he desired appellant to proceed to explore and develop the premises under the contract, on the contrary, in effect, forbade it to do so. Through appellant's agents he gave notice and warned it that he had terminated the contract or lease, and would proceed to quiet his title, and if appellant's agent placed any stakes on the premises he would be guilty of a trespass. This feature of the case is expressly ruled by the decisions of this court in *Consumers Gas Trust Co.* v. *Ink* (1904), 163 Ind. 174, and *Consumers Gas Trust Co.* v. *Worth, supra.* In the latter case, we said: "Certainly appellee, after notifying appellant company that the contract was at an end, was not in a position to insist or expect that appellant should expend money in drilling wells and developing the lands under a contract which he had declared to be forfeited."

Upon no view of the case under the facts is appellee entitled to maintain this action. It follows, therefore, that the court erred in denying appellant's motion for a new trial, for which error the judgment is reversed, with instructions to the lower court to grant a new trial, and for further proceedings consistent with this opinion.