## NEW AMERICAN OIL & MINING COMPANY ET AL. *v.* TROYER ET AL.[1]

[No. 20,743. Filed December 14, 1905. Rehearing denied April 26, 1906.]

1. APPEAL AND ERROR.—*Precipe.—Bill of Exceptions.—Record.*—Where the precipe directs the clerk to certify a "transcript of the following papers" in the cause: "plaintiffs' complaint, * * * the orignal bill of exceptions," etc., the original bill of exceptions contained in the transcript and certified to by the clerk is a part of the record on appeal regardless of the act of 1903 (Acts 1903, p. 338). p. 404.

2. SAME.—*Precipe.—Bill of Exceptions.—Statutes.*—Under the act of 1903 (Acts 1903, p. 338, §7) an original bill of exceptions included in the transcript is a part of the record, though the precipe called for a "transcript" thereof. p. 405.

3. CONTRACTS.—*Gas-and-Oil Leases.—Construction.*—Gas-and-oil leases must be construed in the light of the circumstances of the parties executing them, and the intention of the parties should be given effect. p. 405.

4. SAME. — *Gas-and-Oil Leases. — Construction.* — A gas-and-oil lease providing that the lessee shall sink a well within two months from date or thereafter pay a quarterly rental until a well is sunk, means that the lessee shall sink such well within a reasonable time, at the option of such lessor. p. 406.

5. SAME.—*Gas-and-Oil Leases.—Acceptance of Alternative Payments.*—Where the lessor accepted the rental agreed upon in case of delay in sinking a well, he could not, within ten days

after the expiration of the time paid for, arbitrarily determine the lease, without giving the lessee a reasonable time in which to sink a well, such time being unreasonable.   p. 407.

6.  APPEAL AND ERROR.—*Vacation.*—*Parties.*—In a vacation appeal taken by one defendant all joint judgment defendants must be made coäppellants in order to give the Supreme Court jurisdiction.   p. 408.

7.  PLEADING.—*Disclaimer.*—*Quieting Title.*—*Dismissal.*—Where a defendant in a suit to quiet title files a disclaimer, he is conclusively estopped from afterward asserting any claim to the property in question, and it is the imperative, statutory duty (§1084 Burns 1901, §1072 R. S. 1881) of the court to dismiss such suit, as to such defendant, at plaintiff's cost.   p. 408.

8.  APPEAL AND ERROR.—*Vacation.*—*Parties.*—*Disclaimer.*—*Judgment.*—Where the transcript in a vacation appeal shows that one defendant disclaimed all interest in the property whose title was sought to be quieted, and afterward a decree was entered against "all of said defendants herein," such disclaiming defendant is not a necessary coäppellant, since after the filing of such disclaimer he was no longer a defendant.   p. 409.

9.  CONTRACTS.—*Gas-and-Oil Leases.*—*Construction.*—A gas-and-oil lease giving the lessee the right to determine same by reconveying, and making same void for a refusal by the lessee to pay the stipulated rentals, is not voidable at the option of the lessor, since such contracts are not designed to convey a present interest in the land, nor are they governed by the statutes relative to landlord and tenant. *Knight* v. *Indiana Coal, etc., Co.*, 47 Ind. 105, distinguished.   p. 410.

From Grant Circuit Court; *H. J. Paulus,* Judge.

Suit by Lucy M. Troyer and others against the New American Oil & Mining Company and another.   From a decree for plaintiffs, defendants appeal.   Transferred from Appellate Court under subd. 2, §1337j Burns 1901, Acts 1901, p. 565, §10.   *Reversed.*

*McBride & Denny,* for appellants.

*George A. Mason, Manley & Strickler, John B. Mason* and *Dailey, Simmons & Dailey,* for appellees.

HADLEY, J.—Suit by appellees to quiet title.   Appellant Crown Oil Company filed a cross-complaint, claiming certain interests in the land by reason of an oil-and-

gas lease, and asking an accounting for oil alleged to have been converted to the use of appellees. The complaint and cross-complaint were answered by general denial. Trial by the court, finding and judgment for appellees. Appellants' motions for a new trial, asked on the grounds that the decision of the court is not sustained by sufficient evidence and is contrary to law, were overruled, and in these rulings appellants claim error.

Appellees vigorously insist that the evidence is not in the record. The precipe for the transcript directed the clerk to "prepare and certify a true, full and complete transcript of the following papers, proceedings and judgment in the above-entitled cause: plaintiffs' complaint, * * * separate motions for a new trial by the Crown Oil Company and the New American Oil & Mining Company, the original bill of. exceptions of the Crown Oil Company, * * * also all order-book entries made in this cause and also including this precipe." The clerk certifies that the transcript contains the original bill of exceptions and the original precipe for transcript. The original bill of exceptions containing the evidence is incorporated in the transcript, and the only question is whether it is a part of the record. The bill of exceptions containing the evidence is the only bill that had been filed, and the only paper or document permitted by statute to be incorporated in the transcript in its original form. Therefore, in receiving an order for a transcript for an appeal, and a list of the various papers, documents and entries desired, and which could only find their way into a transcript by being copied therein, to find in the list a call for the "original bill of exceptions," when the term original could have no significance except as a direction to the clerk to insert the original in the transcript, was sufficient to justify the clerk in construing the precipe into an order to frame the transcript as was done. We think it should be held that the evidence is in the record.

This case was tried prior to the act approved March 9, 1903, section seven of which act (Acts 1903, p. 338, §641g Burns 1905) specifically removes all such questions as that just considered.

2.

Appellants, as assignees of Thomas McDonald, base their claim upon a certain oil-and-gas contract, among other things providing:

"In consideration of the sum of $1 and the covenants and agreements hereinafter contained, Lucy M. Troyer [appellee], first party, hereby grants and conveys unto Thomas McDonald, second party, or assigns, all the oil and gas in and under the following described premises in Grant county, * * * together with the exclusive right to enter thereon at all times for the purpose of drilling or operating for oil, gas or water. * * * The above grant is made upon the following terms: Second party agrees to drill a well upon said premises within two months from this date, or thereafter pay, in advance, the first party, for further delay, a quarterly rental of $20, until said well is drilled."

The other provisions of the contract are in substance the same as those involved in *LaFayette Gas Co.* v. *Kelsay* (1905), 164 Ind. 563, and *Consumers Gas Trust Co.* v. *Littler* (1904), 162 Ind. 320, and do not affect the questions involved.

Prior to the commencement of this suit, no well had been drilled, and no possession of the premises had been taken for the purpose of drilling.

In this, as in other contracts of its class, the purpose of the parties is the exploration for oil and gas. The landowner intends to part with, and the operator intends to acquire, no other right than the exclusive privilege of entering upon the land, and with as little injury as possible to the possession, or the freehold, and for mutual profit in the discovery, put down wells and mine and market the product, whatever it may be. There

3.

are many things to be taken into account in arriving at a fair and rational construction of a contract like this. The usual rivalry in procuring leases in the limited oil-and-gas territory, the time and expense required in drilling wells, the peculiar character of the fluids, the difficulties and delays in providing pipe-lines, and methods of storage and transportation, are all matters generally present at the making of such a contract. Besides, without a market the operator can ill afford, and it will avail the landowner little, to put down a well before transportation lines have approached within accessible distance. So it is more than likely, when the contract before us was executed, neither party expected that a well should be sunk within

4. limits of two months. As to the particular time when the test well should be drilled there is nothing more definitely expressed in the contract than that it shall be done some time. That some delay was expected, or at least provided for, is very certain from the alternative character of the promise. Note the language:

> "The second party agrees to drill a well upon said premises within two months from this date, or thereafter pay, in advance, the first party, for further delay, a quarterly rental of $20, until said well is drilled."

There is no absolute promise to make a well in two months, or in two years for that matter. But if there is failure within the first two months the operator must thereafter, for further delay, pay $20 quarterly in advance until it is drilled. He might do one or the other at his option, at least for the first quarter. There being no definite time limit within which the well must be constructed, the law intervenes; and directs that it shall be accomplished within a reasonable time. This means within a reasonable time at the option of the landowner. *Consumers Gas Trust Co.* v. *Worth* (1904), 163 Ind. 141; *Hancock* v. *Diamond Plate Glass Co.* (1904), 162 Ind. 146.

The latter might waive performance indefinitely; and if he accepted a valuable consideration for postponement he was as much bound by it as if the end of the paid period was the time limit stipulated in the original contract. All things considered, it is at least probable that when the contract was entered into the landowner had reason to believe that the operator was counting on an extended delay, upon prompt payment of the quarterly sums. And it is manifest that appellees were in no hurry to precipitate the beginning of operations. They had a certainty in the rentals being paid, and they might have preferred the certain rentals to the uncertainty of finding oil or gas under their land.

At all events, the record shows that appellees accepted five quarterly payments in advance for further delay, without complaint, which carried the paid period up to June 10, 1901, and on the ground that they had the right to terminate the contract, and that the same was forfeited for failure to drill a well within the time paid for, commenced this suit ten days later, to wit, June 20, 1901. Having accepted what was to them a satisfactory consideration for postponement of operations until June 10, appellees were not in a situation to make complaint before that time. Under a contract of this sort parties must act fairly with each other. The landowner must be given a fair opportunity to compel such timely operations as will preserve the underlying oil and gas, and prevent its being mined through wells on other premises. While on the other hand he will not be permitted to take advantage of delays that have been reasonably induced by his own conduct, and force a forfeiture for nonperformance. The operator must have a fair chance to perform his contract. *LaFayette Gas Co.* v. *Kelsay, supra; Consumers Gas Trust Co.* v. *Ink.* (1904), 163 Ind. 174; *Consumers Gas Trust Co.* v. *Worth, supra; Consumers Gas Trust Co.* v. *Littler, supra.*

New American Oil, etc., Co. *v.* Troyer—166 Ind. 402.

He has not had a fair chance in this case. If appellees, when they accepted the advanced payment on March 10, or at some other reasonable time, had given appellants notice that they must drill a well within that quarter, and that no further extension of time would be granted, then we should have quite a different question. This suit, however, is brought and prosecuted upon the theory that the failure of appellants to drill a well within the paid period put an end to their right to drill one at all. This view is erroneous. The peculiar character of the contract, and the conduct of the parties while acting under it, are such, we have seen, as make an action without notice, and reasonable time to perform, inequitable and unsustainable.

The judgment is therefore reversed, with instructions to sustain the motion for a new trial.

## ON PETITION FOR REHEARING.

HADLEY, J.—Appellees complain because we did not consider their motion to dismiss the appeal, grounded on the want of proper parties and the want of notice.

6. There can be no doubt of the rule, as contended for, that all joint judgment defendants must be joined as coäppellants in an appeal taken by one or more of them in vacation, but we are not satisfied that this appeal belongs to that class. The record shows that the New American Oil & Mining Company, the Crown Oil Company and Thomas McDonald were made parties defendant to the complaint. Both companies appeared, and each filed an answer in general denial. Thomas McDonald appeared and filed a disclaimer in effect that he had no interest, claim or possession in the real estate described in the complaint, or any part thereof.

The suit is to quiet title against all adverse claims of the defendants, and McDonald's disclaimer signified that at the time of filing he had no interest, claim or

7. possession in and to the lands described in the complaint. Such a pleading of itself operates as

an estoppel, and, between the parties and their privies, is an absolute bar to any further assertion of the right renounced. So the bill, or complaint, should, under our statute (§1084 Burns 1901, §1072 R. S. 1881), have been dismissed at the cost of the plaintiff. 6 Ency. Pl. and Pr., 725, and authorities collated in note. Such a pleading is no sense an answer. "It forms no issue to be tried, but simply puts the defendant out of court without further proceedings, leaving the plaintiff to pay the costs." 1 Works' Practice (3d ed.), §555.

The decree subsequently rendered by the court, as shown by the record, quieting the title of the plaintiffs, was against "all of said defendants herein," and for

8. costs against the Crown Oil Company. It is not stated that a decree was rendered against McDonald as one of the defendants. After he filed his disclaimer the court had no right to render a decree against him. Having at the very threshold formally informed the court that he had no interest in the subject-matter of the suit, a decree against him thereafter, even for cost (under §1084, *supra*), would have amounted to nothing more than would a decree against one who was not named as a party. McDonald was out of the case from the moment he filed his disclaimer, and assuming that the court proceeded as the statute directs in such cases, we will presume, nothing appearing to the contrary, that the court then discharged him at the plaintiffs' cost. The two remaining defendants, by name, took a new trial as of right, without mentioning the name of McDonald, but since the record discloses no additional complaint, or amended complaint, affecting McDonald, what took place in the second trial is immaterial, since we think it sufficiently appears that McDonald was not a party in the case at any time after he filed his disclaimer. Motion to dismiss the appeal should be overruled.

Appellants' counsel very skilfully and ably argue that this case is not ruled by that class of cases to which *Consumers Gas Trust Co.* v. *Littler* (1904), 162 Ind. 9.    320, belongs, because the contract in this case contains a provision not contained in any of the former cases, to wit:

"Second party [oil company] may, at any time, reconvey this grant, and thereupon this instrument shall be null and void."

It is contended that the provision quoted renders the contract voidable at the pleasure of the company, and that under the rule declared in *Knight* v. *Indiana Coal, etc., Co.* (1874), 47 Ind. 105, 111, 17 Am. Rep. 692, which was in force and effect when the contract was made, if voidable at the will of one party to the contract, it is equally voidable at the will of the other. The unsoundness of the argument is found in the fact that the case of *Knight* v. *Indiana Coal, etc., Co., supra,* rests upon a principle altogether different from that upon which the Littler class is grounded. The contract in the Knight case related to the mining of coal; to the conveyance of an interest in real estate. In that case the court says: "The owner in fee simple has the power to sell and convey his mines, or any stratum, by deed or grant, so as to create one freehold in the soil and another in the mines, and as a conclusion from the premises, a freeholder of an estate of inheritance may, by deed, create as many freeholds beneath the surface as he can properly designate. Thus, one person may own the surface, another may be entitled, by conveyance, to the iron, another to the limestone, and still another to a stratum of coal; for coal and minerals in place are land, and are subject to a conveyance as such, and the owner of the mineral right has a corporeal hereditament distinct from the surface." Citing cases. Our statute relating to landlord and tenant rests upon the same foundation; that is, within the meaning of the statute upon the execution of

a lease, it is implied that the lessor parts with, and the lessee acquires, some vested right in a fixed and certain property interest in the demised premises; such as the right to possess and use the land or tenements, to till the soil and carry away the crops, to enter and take gravel, stone, ore, coal and other fixed substances under the surface, of which the earth and estate are composed. *Heywood* v. *Fulmer* (1892), 158 Ind. 658, 18 L. R. A. 491. In this class of leases whatever title, or right, is acquired under the lease, becomes vested upon the execution of the contract. It is different with contracts relating to the prospecting for gas or oil, and, if successful, the mining thereof. It cannot be claimed that the one we are considering belongs to any other class. In addition to the stipulation above quoted, and upon the strength of which it is sought to distinguish the contract, another very characteristic provision is found in the body of the instrument as follows:

"Should second party [company] refuse to pay such rental when due, such refusal shall be construed by both parties hereto as the act of the second party for the purpose of surrendering the rights hereby granted, and this instrument, in default of the rental, shall be null and void without further notice to second party."

The peculiar, wandering character of gas and oil precludes ownership in their natural state, and hence they are not the subjects of sale and conveyances until they have been reduced to possession and placed under control by being diverted from their natural paths into artificial receptacles. In such cases the real subject of the contract is the mining of the gas or oil that may be found, on the terms specified. The preliminary exploring is a mere incident that goes for nothing if unsuccessful, and unless oil or gas is found in paying quantities, then there is and was not at the inception of the contract anything to which

it could attach. So the title in such contract is at least inchoate until the result of the drilling is ascertained. And if barren territory is developed then there is no lease, no continuing contract, no conveyance of title, because there is nothing to pass under the agreement. Added to this peculiarity is the custom of making such contracts greatly in advance of the demand for the product, the impracticability of drilling until lines of transportation approach within reasonable reach, the delays in beginning operations, secured by the payment of a small sum called rent, sometimes justifiable and sometimes unreasonable, and merely for speculative purposes, the possibility, and occasional practice, of extracting the fluids from under lands through wells on the premises of another, the uncertainty of the discovery, the large profits sometimes realized, the heavy expense of drilling the test well, the total loss of labor and expense in case of failure, these and other like considerations have led courts, long before the making of the contract involved in this suit, to place oil-and-gas contracts, on account of the "known characteristics of the business," in a class of their own. *Gadbury* v. *Ohio, etc., Gas Co.* (1904), 162 Ind. 9, 62 L. R. A. 895; *McKnight* v. *Manufacturers Nat. Gas Co.* (1892), 146 Pa. St. 185, 23 Atl. 164, 28 Am. St. 790. Such contracts are not ordinary leases nor within the purview of our statute concerning the relation of landlord and tenant. *Hancock* v. *Diamond Plate Glass Co.* (1904), 162 Ind. 146. It follows that the case of *Knight* v. *Indiana Coal, etc., Co., supra,* is not an authority in an oil-and-gas contract of the character under consideration.

We have reviewed the original opinion, and remain satisfied that it is correct upon the facts involved. Petition for rehearing overruled.