Pittsburgh, Cincinnati and St. Louis R. W. Co. v. Thornburgh.

No. 11,090.

PITTSBURGH, CINCINNATI AND ST. LOUIS RAILWAY COMPANY v. THORNBURGH.

PLEADING.—*Complaint.—Defects Cured after Verdict.*—A complaint, alleging that the defendant "*is indebted* to the plaintiff," etc., is good after verdict, without an express averment that the debt is due and unpaid.

LANDLORD AND TENANT.—*Rent.*—Where the relation of landlord and tenant has never existed, there can be no recovery for the use and occupation of real estate.

SAME.—*Principal and Agent.*—Where an agent uses his own building and grounds in the business of his principal, without any intention or notice of purpose to charge rent in addition to his compensation as agent, he can not afterwards recover rent.

From the Marion Circuit Court.

*T. A. Hendricks, A. W. Hendricks, C. Baker, O. B. Hord, A. Baker* and *E. Daniels,* for appellant.

*J. Coburn,* for appellee.

HAMMOND, J.—Complaint in two paragraphs by the appellee to recover for the use and occupation of real estate. Appellant answered by the general denial, the statute of limitations and payment. To the special paragraphs of answer appellee replied in denial. The issues were tried by a jury and a verdict returned for the appellee, upon which judgment was rendered over the appellant's motion for a new trial.

It is insisted that the complaint does not state facts sufficient to constitute a cause of action. This objection is presented for the first time in this court, there having been no demurrer to the complaint, nor motion in arrest of judgment in the court below.

The first paragraph of the complaint alleges that the appellant is indebted to the appellee in the sum of $1,700 for rent of the appellee's ground and building from February 15th, 1869, to February 15th, 1881, at $12 per month, at the special request of the appellant. The second paragraph is like the first, except that it omits the averment that the occupancy was at appellant's special request, and in lieu thereof

alleges that the building and ground were used by the appellant with the appellee's permission.

It is objected to the complaint that it does not aver that the debt sued upon is due and unpaid. Whether a demurrer to each paragraph of the complaint, for want of facts, if presented in the court below should have been sustained, we do not decide, but we are clearly of the opinion that the complaint is sufficient after verdict. The charge for rent was made up to a definite time before the commencement of the action. Inferentially, the lease expired, or, by its terms, the rent was due at the date to which the charge was made.

In *Mayes* v. *Goldsmith*, 58 Ind. 94, it was held that the words "is indebted" implied a present indebtedness; "in other words, that the claim was mature." These words occur in the appellee's complaint, and should have the same construction. See, also, *Parker* v. *Clayton*, 72 Ind. 307; *Heshion* v. *Julian*, 82 Ind. 576; *Charlestown School Tp.* v. *Hay*, 74 Ind. 127.

There is no conflict in the evidence, and the facts proved were substantially as follows:

On February 1st, 1869, the appellant leased the only railroad running through the town of Charlottesville. The appellee, who had been station agent at that place since 1858, continued in the same position as appellant's agent until February 15th, 1881. He owned a building about ten feet from the railroad track, one room of which he used as a ticket office, and another as a waiting-room, while he was appellant's agent. He had also used them for the same purpose under the prior management of the road. He also owned a quarter of an acre of ground adjoining the appellant's right of way which he used as a stock-yard for the shipment of stock on the railroad. This was fenced at the appellant's expense. The furniture in the rooms mentioned was owned by the appellee. He was paid $30 per month during the first two years of his employment by appellant. His compensation was then reduced to $27 per month, and so remained for a year or two,

when it was again reduced to $15 per month, to which was then added a commission on the sale of tickets. The fuel used in the waiting-room and ticket-office was furnished by the appellant. Appellee was annually furnished with a pass on the railroad, and, also, when requested by himself, with trip passes for members of his family. During his employment the appellee was, a considerable part of the time, engaged in purchasing and shipping grain and hogs. In transacting this business, he used without hinderance and as far as he desired the rooms and stock-yard in controversy. At least half the shipments of freight from Charlottesville during appellee's service for appellant were made for himself. Appellee was superseded on February 15th, 1881, by the appointment of an agent who was a competent telegraph operator, it being desired by appellant to establish a telegraph station at that place, and the appellee having no skill in telegraphy. There was no express contract for the rent of, or the payment of rent for, the rooms and stock-yard. Appellee was paid monthly for his services as agent, but did not, during his employment, make any charge or demand for such rent. About two years after his services began, he wrote to the appellant's superintendent to the effect that he thought his pay as agent was not sufficient, and that he ought to have pay for the use of the rooms. No answer was made to this, and nothing further was said upon the subject until immediately after his discharge, when he sent a claim to the superintendent, made out as an account against the appellant, charging for twelve years' rent for the rooms and stock-yard. Two days afterward he wrote to the superintendent, saying: " I want to know by 4:42 to-morrow, P. M., what disposition you are going to make of my claim for rent, or the ticket-office goes through the window; any way to clear it out the quickest."

There was no evidence whatever tending to prove an express contract for the lease of the premises, or for the payment of rent. In fact the appellee testified that there was no such contract. The facts do not, we think, establish an

implied contract of the kind necessary to be inferred to authorize a recovery in favor of the appellee.

It seems to us that the conclusion can not be avoided that the appellee's compensation as agent, with the incidental benefits which it may be presumed that he received in his business in buying and shipping grain and hogs, was considered as covering such uses of his premises as he applied to the appellant's business. The appellant, it is obvious, never supposed for a moment that it was chargeable with the rent of the premises over and above the appellee's compensation and advantages mentioned. Nearly two years of his employment had passed, before the appellee even suggested that he should have a special compensation for his premises; and then the suggestion was made, not under claim that he was entitled to it by virtue of any express or implied contract, but with the view of obtaining from the appellant an agreement to pay him rent. No such agreement was obtained, and the matter passed in silence for ten years more and was then not referred to until his discharge. It seems incredible that, during twelve years, appellee should be paid monthly for his services without so much as presenting a claim for rent if he supposed the circumstances of the case gave him any valid right thereto. The law requires an agent to act with candor and in good faith with his principal. Had the appellee intended to charge rent for his premises, he should, within a reasonable time after entering into appellant's service, have given the latter notice of such intention, so that it might have declined any use of the premises if it did not choose to accede to appellee's demand. No such notice was ever given, from which it is clearly inferable that the intention to make a specific charge for the use of the premises had no existence until the appellee's employment ceased.

The evidence, we think, wholly fails to show that the relation of landlord and tenant ever existed between appellee and appellant, and without such relation there can be no recovery for use and occupation of real estate. *Newby* v. *Vestal,* 6

Ind. 412; *Nance* v. *Alexander*, 49 Ind. 516; *Tinder* v. *Davis*, 88 Ind. 99; *Little* v. *Libby*, 2 Greenl. 242 (11 Am. Dec. 68).

The relation of landlord and tenant can not exist without an actual occupancy by the tenant. Such occupancy as between the tenant and landlord must be exclusive upon the part of the former. A participation in the possession of real estate which does not exclude the owner does not create a lease. *State* v. *Page*, 1 Speers Law (S. C.) 408 (40 Am. Dec. 608); *Central Mills Co.* v. *Hart*, 124 Mass. 123.

The appellant's possession, even upon the theory that the appellee's possession as its agent was its possession, was not exclusive, for it is shown that, without let or hinderance, he occupied the premises for his own use so far as his own business required. If there was a tenancy at all, it was from year to year, and, as such, it would not have expired until February 1st, 1882, and then only after three months' notice. Sections 5208–9, R. S. 1881.

But the appellee's notice that if his claim for rent was not recognized by 4:42 p. m., of February 18th, 1881, he would summarily thrust the ticket-office through the window, was entirely inconsistent with the recognition of such tenancy. It is apparent from the evidence that the appellee himself was in the absolute possession of the premises during the time for which he sues for rent, and that while in such possession he used the premises, partially, for the appellant's benefit. As the relation of landlord and tenant did not exist, the appellee's claim against the appellant for the use and occupation of the premises can not be sustained. There was error in overruling the motion for a new trial.

Reversed, at appellee's costs, with instruction to sustain the appellant's motion for a new trial, and for further proceedings.

Filed Nov. 12, 1884.