## DILL *v.* FRAZE ET AL.

[No. 20,982. Filed January 17, 1907. Rehearing denied June 28, 1907.]

1. CONTRACTS.—*Gas and Oil Leases.—Consideration.—Assignments. —Estoppel.*—The grantor of a gas and oil lease stipulating that it had been executed upon a consideration of $1, is estopped, as against an innocent purchaser for value, from denying the receipt of such consideration. p. 56.

2. SAME.—*Gas and Oil Leases.—Purpose.—Construction.*—The central purpose of the ordinary gas and oil lease is to develop the production of such minerals; and such leases are construed in the light of such purpose. p. 56.

3. SAME.—*Gas and Oil Leases.—Options.—Forfeitures.*—Where a gas and oil lease provides that wells shall be sunk within a designated time, or in case of failure, the lessee to have the right, upon making certain payments, to an extension of the time, the lessor may compel the development of the territory, or, in case of failure, forfeit the lease. p. 56.

4. SAME.—*Gas and Oil Leases.—Options.—Payments for Extension. —Whether in Advance.*—A gas and oil lease stipulating that certain wells should be sunk within a certain time, or, in case of failure, the lease to be extended for a certain time upon the payment of certain amounts, and, in case of failure to pay such amounts, the lease to forfeit, requires such sums to be paid in advance. p. 56.

5. SAME.—*Gas and Oil Leases.—Nature of.—Landlord and Tenant.* —The ordinary gas and oil leases do not create the relation of landlord and tenant, and an action cannot be maintained thereon for the beneficial use or occupation of the lands. p. 57.

6. SAME.—*Gas and Oil Leases.—Forfeitures.—Election.*—The forfeiture of a gas and oil lease for failure to sink wells is optional with the lessor, and his election to determine the contract must be made at the time of the failure. p. 57.

7. SAME.—*Forfeitures.—Equitable Relief From.—Gas and Oil Leases.*—Equity will not relieve the lessee in a gas and oil lease, where such lessee has failed to sink a well within the specified time, and has failed to make the payment necessary to secure an extension of time, the lease providing for a forfeiture under such circumstances. p. 58.

8. APPEAL.—*Transcript.—Change of Venue.—Defects in Clerk's Certificate.*—Whether a transcript on a change of venue was not under seal, is a question for the trial court. p. 59.

9. SAME.—*Transcript.—Change of Venue.*—A .transcript, on appeal to the Supreme Court, which includes the transcript of the papers and entries of another court on a change of venue, properly certified, sufficiently authenticates the papers and entries of the court from which the venue was changed. p. 59.

10. STATUTES.—*Construction.—Prior Statute.—Judicial Interpretation.*—A statute substantially reënacting a prior one which had received a judicial construction, will be construed as the prior one. p. 60.

11. TRIAL.—*Change of Venue.—Number Permissible.—Several Parties.*—One party to an action has the right to a change of venue from the county, regardless of the wishes of his coparties. *Peters* v. *Banta*, 120 Ind. 416, distinguished. p. 61.

From Henry Circuit Court; *John M. Morris*, Judge.

Suit by Charles F. Dill against Emmett Fraze and others. From a decree for defendants, plaintiff appeals. Transferred from Appellate Court under §1337j Burns 1901, subd. 2, Acts 1901, p. 565, §10. *Reversed.*

*George H. Koons* and *W. A. Brown*, for appellant.

*Forkner & Forkner* and *Brownlee & Browne*, for appellees.

GILLETT, J.—Suit by appellant against appellees to cancel a certain gas and oil contract. The suit was instituted and the issues made in the Delaware Circuit Court, but the venue thereof was changed, on the motion and affidavit of appellee Mutual Oil Company, to the Henry Circuit Court, where the cause was tried.

The contract, which is set forth in the complaint, states that, in consideration of $1, Charles F. Dill and wife, described as the first party, have granted unto Emmett Fraze, described as the second party, all the oil and gas under a certain described .forty acres of land, "for the purpose of drilling and operating for oil and gas," for and during the term of five years from date, and as long as oil and gas can be found on said real estate in paying quantities or the rental is paid thereon as provided in the contract. The pro-

visions as to royalties are then set out, and then follows this language:

"In case no well is completed within sixty days and number two well in sixty days thereafter from this date, then this grant shall become null and void, unless second party shall thereafter pay at the rate of $40 for each year such commencement is delayed. A deposit to the credit of the first party in the Merchants Bank, Muncie, Indiana, will be good and sufficient payment for any money falling due on this grant. First party has the right to locate roads to and from places of operation, and locate first well. If oil is found in paying quantities a well shall be drilled each thirty days thereafter until four wells are drilled or as many more as the party of the second part sees fit to drill, and further agree to leave a water well. The second party shall have  *  *  *  the right to remove all its property at any time, and may cancel and annul this contract, or any undrilled portion thereof, at any time upon payment of $1 to said first party, and releasing the same of record."

The lease was executed May 26, 1903, and this action was commenced December 31, 1903. It is alleged in the complaint that operations have not been commenced to drill a well on the land, and that no sum whatever has been paid or deposited for the delay. The complaint further alleges that the recited consideration of $1 for the execution of the agreement was not in fact paid. There are also charges that the defendants have never taken possession, but have abandoned the same. Separate paragraphs of answer were filed by the appellee oil companies, each alleging, in substance, that it was the assignee of said contract for a valuable consideration, and had taken the same without knowledge that the original consideration of $1 for the execution of said contract had not been paid; that it proposed to enter upon said land to prosecute the drilling and operation of gas and oil wells in the spring of 1904; that, while it admitted that the sum fixed as the price of delay had not been paid, yet it had in good faith construed said contract as not requiring said payment to be made in advance, and it offered to pay

the annual rental should the court hold that it was due. A demurrer was addressed to these paragraphs, but was overruled, and, upon the completion of the issues, there was a trial, which resulted in a finding and judgment for appellees. No question is made by counsel for the latter concerning the sufficiency of the complaint, except so far as it presents the question whether the rent was payable in advance.

Having stated the substance of said pleadings, we enter upon the question of the sufficiency of said answers. Under the facts averred in said answers appellant is estopped to deny that the original consideration has been paid, and we therefore assume the original validity of said contract. The question of forfeiture, therefore, becomes the controlling question in the case. There can be no doubt that the principal purpose of appellant in making said contract was to procure the exploration of his land for oil and gas, to be followed by the development of it, if circumstances warranted. The strong implication of the contract was that this would be done, and it must be construed in the light of this fact. *Consumers Gas Trust Co.* v. *Littler* (1904), 162 Ind. 320; *Ohio Oil Co.* v. *Detamore* (1905), 165 Ind. 243.

While, upon the receipt of the first year's compensation for delay, the operator would have been entitled to postpone the beginning of operations, yet it does not admit of question that it was within the power of appellant, by appropriate action, to prevent the second party from continuing to hold the right granted in the land, without exploration or development, for the whole of the contract period.

The agreement contains an express provision for a forfeiture if a well is not completed within sixty days, unless the second party thereafter pays at the rate of $40 per year for each year such completion is delayed. The unit of payment was $40, and the question arises

whether such payment was to be made in advance. While the ordinary rule governing rentals is that payment in advance is not required, unless so stipulated in the contract, yet, as the endeavor of courts in the enforcement of agreements is to effectuate the intent of the makers, we are of opinion that, in the circumstances of this case, it should be held that it was the purpose of the parties that payment should be made in advance.

The situation of appellant must be considered. There was no express agreement on the part of the operator that he would even explore for gas or oil; on the contrary, 5. he had reserved the right at any time, upon the payment of the nominal consideration of $1, to cancel and annul the contract. He had not agreed that he would pay any sum in the nature of rent. *Ohio Oil Co.* v. *Detamore, supra; Van Etten* v. *Kelly* (1902), 66 Ohio St. 605, 64 N. E. 560. The contract was not a lease (*Hancock* v. *Diamond Plate Glass Co.* [1904], 162 Ind. 146; *New American Oil, etc., Co.* v. *Troyer* [1906], 166 Ind. 402), and, as the relation of landlord and tenant did not exist, and as there was no beneficial use or occupation, an action could not have been maintained on an implied agreement to pay. *Ohio Oil Co.* v. *Detamore, supra; Pittsburgh, etc., R. Co.* v. *Thornburgh* (1884), 98 Ind. 201, and cases cited; *Diamond Plate Glass Co.* v. *Curless* (1899), 22 Ind. App. 346.

The contract before us distinctly contemplated that a forfeiture should result at the end of sixty days (a well not being then completed), unless the operator should pay 6. the consideration for delay. This plainly required him to become an actor if he would save his rights. In such a case the owner has the privilege of declaring the lease forfeited at the end of said time, except as the other party pays the sum stipulated for the delay. The forfeiture must occur, if at all, when that time has elapsed, provided that the owner sees fit to take advantage of it. In these circumstances, it would throw the provisions of said contract

into hopeless confusion, and would work a great injustice to the owner, to hold that he must wait a year, without even the assurance that the contract would then be complied with, and with no remedy for compensation *de hors* the contract, to have it determined whether the forfeiture he had already elected to declare, acting under the terms of his contract, was really an effective act.

Holding, as we must, that the sum stipulated for delay was payable upon the failure to drill a well within the time stipulated, the question then arises whether equity

7. will relieve from the forfeiture provided in the contract. It must be remembered that the preliminary drilling of a well was for the purpose of a test. *Consumers Gas Trust Co.* v. *Worth* (1904), 163 Ind. 141. The title was inchoate, and for the purposes of exploration only, until oil or gas was found. *Gadbury* v. *Ohio, etc., Gas Co.* (1904), 162 Ind. 9, 62 L. R. A. 893; *Ohio Oil Co.* v. *Detamore, supra.* There is little or no reason for the interference of a court of equity to prevent a forfeiture before operations have begun, where the operator has sinned away his opportunity under the contract. The wandering and vagrant character of oil and gas is recognized by the courts, and contracts pertaining thereto are to be construed with reference to the known characteristics of the business. *Ohio Oil Co.* v. *Detamore, supra; McKnight* v. *Manufacturers Nat. Gas Co.* (1892), 146 Pa. St. 185, 23 Atl. 164, 28 Am. St. 790. The injustice to a landowner of withdrawing through neighboring wells the oil or gas which is under his soil, while the development of his property, by himself or others, is prevented by a contract, resting upon a nominal consideration, is obvious. It is not, therefore, to be supposed that a landowner would tie up his property in the oil belt for sixty days upon the nominal consideration of $1, except as he was moved thereto by the supposition that his property would be explored within that time, and afterwards developed, if the result of the exploration warranted

it, and in such a case, although the contract may authorize a further delay, upon payment of a stipulated price therefor, to afford the operator an opportunity to consummate his arrangements, yet the courts can but regard a provision for a forfeiture in such a case as of the essence of the contract. *Gadbury* v. *Ohio, etc., Gas Co., supra.*

The answers of the oil companies reveal no reason for a failure to observe the provisions of their assignor's undertaking except one which rests in negligence; such offer as, by their answers, they make to do equity, is merely to perform the letter of a hard bargain, a performance which would give to appellant no semblance of the advantage which might have inured to him by the performance of the implied undertaking concerning development and operation, which this court knows was the moving consideration in the making of the contract. When there is read into these answers the facts, which may be presumed from their silence —facts, we may say, which the evidence shows—that appellant's contract has been made the subject of a trafficking by speculators, that the surrounding country has been developed, that before suit was brought one of said oil companies put down a well in adjoining property, and that it is producing heavily, we have a case in which it appears that equity would be promoted by enforcing the forfeiture stipulated for. *Gadbury* v. *Ohio, etc., Gas Co., supra; Ohio Oil Co.* v. *Detamore, supra.* We hold that the court erred in sustaining the demurrer to said answers.

Appellees' counsel assert that the question arising on the sustaining of the demurrer to the answers is not raised, because the transcript of the clerk of Delaware county is not under seal, and because the pleadings are not set out in his transcript. It appears to us that the question as to the authenticity of the transcript was for the court below, and as to the point concerning the authenticating of the original papers, it appears to us that the objection is answered by *Southern Ind. R.*

*Co.* v. *Martin* (1903), 160 Ind. 280, *Perry, etc., Stone Co.* v. *Wilson* (1903), 160 Ind. 435, and *Board, etc.,* v. *Davis* (1904), 162 Ind. 60.

It is further contended on behalf of appellant that he was entitled to a trial in the county in which the action was instituted, since the change of venue was granted, over his objection on the motion and affidavit of but one of the defendants, the Mutual Oil Company. Appellant's counsel rely, in support of their contention, upon *Peters* v. *Banta* (1889), 120 Ind. 416, and cases following it, which decide that but one change from the county can be taken by either side, and that for such purpose the word "party" in the statute (§424 Burns 1908, §413 R. S. 1881), is to be understood as having been used collectively, as between two or more plaintiffs or defendants.

It was held under §207 of the code of 1852 (2 R. S. 1852, p. 74), which provided for a change from the judge upon the making and filing of the prescribed affidavit by "either party," that one of a number of defendants was entitled to secure such change. *Krutz* v. *Howard* (1880), 70 Ind. 174. In §422 Burns 1908, §412 R. S. 1881, we also find it provided that the venue may be changed upon the application of "either party." In the making of provision for a change from the county or the judge, it was evidently the design of the General Assembly, under both the old and the present code, to secure to the litigant an impartial tribunal, and, as respects the later statute, we must presume that it was enacted with a knowledge of the construction which this court had given to the words "either party," as used in the prior provision, which, as we have seen, was designed to accomplish the same general end. This, in the absence of any consideration to the contrary, is at least persuasive evidence that it was the legislative intent that the words "either party" should receive the construction which had been given them by this court prior to 1881. *Jarvis* v. *Hitch* (1903), 161 Ind. 217; *Board, etc.,*

State, ex rel., *v*. Bell—169 Ind. 61.

v. *Conner* (1900), 155 Ind. 484; *Cain* v. *Allen* (1907), 168 Ind. 8.

While it is true that in *Peters* v..*Banta, supra,* the court indulged in the observation that the word "party" was used in a collective sense, yet the real reason for the decision lies in the suggested fact that the granting of a change of venue to each of numerous parties would, in many instances, operate as a denial of justice. On the other hand, it is to be observed that to give the statute the construction contended for by counsel for appellant would, in many cases, where the parties to one side of the record were numerous and their interests diverse, practically operate as a denial of the right which the General Assembly intended to give. We hold that the venue was properly changed on the sole application of the Mutual Oil Company.

Judgment reversed, with a direction to sustain appellant's demurrer to said paragraphs of answer.