## PURITAN OIL COMPANY *v.* MYERS.

[No. 5,779. Filed April 3, 1907.]

1. APPEAL.—*Briefs.—Waiver.*—Alleged errors not discussed are waived. p. 696.

2. PARTIES.—*Quieting Title.—Husband and Wife.*—The wife, owning only an inchoate interest in her husband's land, is not a necessary plaintiff with the husband in a suit to quiet the title to such land. p. 697.

3. CONTRACTS.—*Consideration.—Gas-and Oil-Leases.—Extension Periods.*—The real consideration for a gas-and oil-lease is the development of the property; and the alternative extension periods provided in such leases are not intended to give an indefinite time at the lessee's option in which to develop the property. p. 699.

4. SAME.—*Gas-and Oil-Leases.—Cancelation.*—Before the owner can cancel a gas-and oil-lease, which provides that a well shall be sunk within a certain period, or in case of failure, a certain sum shall be paid quarterly until a well is sunk, he must give such lessee notice of his intention to determine such lease and a reasonable time within which to sink such well. p. 700.

5. SAME.—*Gas-and Oil-Leases.—Notice to Determine.*—A notice, given by the lessor to the lessee in a gas-and oil-lease on May 7, 1904, that the lessor would receive no more extension payments thereunder, and demanding that work be begun, entitles the lessor to a decree quieting his title, where work was not begun before the filing of the suit on December 6, 1904. p. 701.

From Henry Circuit Court; *John M. Morris,* Judge.

Suit by John W. Myers against the Puritan Oil Company. From a decree for plaintiff, defendant appeals. *Affirmed.*

*W. W. Thornton,* for appellant.

*William W. Mann* and *Lincoln Lesh,* for appellee.

WATSON, J.—This suit was brought by the appellee against the appellant to quiet his title to certain real estate in Delaware county. The complaint was in two paragraphs. The first was in the usual form. The second, alleging substantially the same facts, sought to cancel a gas-

and oil-lease held by appellant on the tract of land in said county, owned by appellee. Demurrers were filed to each of the paragraphs, which were overruled, and proper exceptions saved. Answers in general denial were filed to each paragraph, and special answers in second, third and fourth paragraphs to second paragraph of the complaint were also filed. The second paragraph of answer alleged the payment to, and acceptance by, appellee of $7.50 on August 1, 1903, the rental for the quarter beginning August 4, 1903, also the payment of $7.50 for the quarter beginning November 4, 1903, and further alleged the payments of $7.50 to the Merchants National Bank for the quarters beginning February 4, 1904, May 4, 1904, August 4, 1904, and November 4, 1904, and credited to appellee's account with said bank. The third paragraph, in addition to the facts alleged in the second, alleged that, prior to the notice given by appellee to appellant, appellee knew of the payments made to said bank for appellee for the quarters beginning February 4, and May 4, 1904, and before the bringing of this suit appellee well knew that other payments had been made to said bank for him. The fourth paragraph alleged substantially the same facts as the second and third, with the additional allegation that said $30 was not paid as an option for any one year, but, on the contrary, was a part of the consideration for all the rights under said contract; that this suit was brought before the end of the second year. Demurrers to each of these paragraphs were filed, overruled, and excepted to by appellee. The cause was put at issue, there was a trial by court, and finding and judgment for appellee.

The errors relied upon are the overruling of the demurrers to the complaint and the motion for a new trial.

Demurrer was upon two grounds: (1) That the 1. complaint does not state facts sufficient to constitute a cause of action. For appellant's failure to discuss this cause in its brief, it is thereby waived. That

the said Elizabeth Myers should be joined as party plaintiff herein. It is contended by the appellee that the
2. second ground of demurrer is insufficient, in that it does not meet the requirements of §342 Burns 1901, cl. 4, §339 R. S. 1881. In view of our holding herein, as to Elizabeth Myers being made a party in this suit, it is unnecessary for us to pass upon this question. This was a suit to remove a cloud from the title to appellee's land, and his wife, Elizabeth Myers, was not a necessary party plaintiff in this suit. The court did not err in overruling the demurrer to the complaint.

The contract sought to be canceled is as follows:

"In consideration of the sum of $1, the receipt of which is hereby acknowledged, John W. Myers and wife, Elizabeth Myers, first parties, hereby grant unto Shade & Reedy, second parties, their successors and assigns, all the oil and gas in and under the following described premises, together with the right to enter thereon at all times for the purpose of drilling and operating for oil, gas, or water, and to erect and maintain all buildings and structures and lay all pipes necessary for the production and transportation of oil, gas or water from said premises. Excepting and reserving, however, to first parties, the one-sixth part of all oil produced and saved from said premises, to be delivered in the pipe-line with which second parties may connect their wells, namely: [Here follows description.]

To have and to hold the above premises on the following conditions: If gas only is found, second parties agree to pay $100 each year for the product of each well while the same is being used off the premises, and first parties to have gas free of cost to heat all stoves in dwelling-house during the same time, and lights. Whenever first parties shall request it, second parties shall bury all oil and gas lines, and pay all damages done to growing crops by reason of burying and removing said pipe-lines. No well shall be drilled nearer than 300 feet to the house or barn on said premises, and no well shall occupy more than one acre. In case no well is completed on the above-described premises within six

months from this date, then this grant shall become null and void, unless second parties shall pay to said first parties $30 each year thereafter such work is delayed.  Paid quarterly in advance.  Paid at Merchants National Bank, Muncie, Indiana.

The second parties shall have the right to use sufficient gas, oil, or water to run all necessary machinery for operating said wells, and also the right to remove all their property at any time.

It is expressly stipulated and agreed that the parties of the second part may, at any time in their option, in consideration and payment of $1 to the parties of the first part, their heirs or assigns, surrender and cancel this lease, terminate all rights and rescind all obligations of either and all of the parties hereto, their successors, heirs or assigns.  Also right to utilize the gas from said wells for the development of said lease.

It is understood between the parties to this agreement that all conditions between the parties hereunto shall extend to their heirs, executors, and assigns."

It was admitted at the trial of this cause that appellee was at the time of the execution of the lease, and still is, the owner in fee and in possession of the land described in the lease and in the complaint; that said lease was duly assigned to appellant and the assignment properly recorded. It was also admitted by the parties that there has never been any drilling for oil or gas upon the premises described in the lease by virtue of the lease, nor any pipe laid or any gas furnished to appellee for lights or fuel.  Nothing was done by the appellant under and by virtue of this contract, except the sending of the four payments to the Merchants National Bank at Muncie for appellee, and which he refused to accept.

It is also established by the evidence that notice was served upon the bank that appellee would not accept any payment by reason of the provisions of said lease after the quarter beginning November 4, 1903; that notice to the same effect was served on the appellant with the following addition:

"That the lease will not be extended beyond such period, nor will a money consideration be received and accepted for further extension or delay in operations thereon for gas and oil, and further you are notified that the sums stipulated for thereon due February, 1904, and May, 1904, and which have been deposited in the Merchants National Bank, Muncie, Indiana, so remain on deposit, and will not be received or accepted for delay in operations. And you are hereby notified and required to proceed with all reasonable promptness and dispatch to operate for oil and gas on said premises, under penalty of forfeiture of all rights and privileges under said instrument of lease for failure so to do."

The lease was made for the purpose of exploring for and developing gas and oil, and this, too, was the moving and vital consideration for the execution thereof. The consideration shifts under different circumstances, or rather, in the event oil is discovered the rental is a stipulated portion thereof and in the event gas only is found a money rental is to be paid. It is evident from the very terms of the contract that it was not the understanding or intention of the parties to extend to the lessees indefinitely the right to begin the drilling, which was the real consideration of this contract. *Hancock* v. *Diamond Plate Glass Co.* (1906), 37 Ind. App. 351; *Consumers Gas Trust Co.* v. *Littler* (1904), 162 Ind. 320.

In the case of *Consumers Gas Trust Co.* v. *Littler, supra,* the court said: "It is clear that the fundamental purpose of both parties was the exploration for gas and oil on the premises. The whole tenor of the contract shows that the prospective benefits and profits from gas or oil were the real considerations moving the contracting parties. To the landowner the manifest inducement was the rent and royalties he expected to enjoy if the gas company should find gas or oil in paying quantities; to the gas company, the right to exclude others from the premises, and the anticipated profits in vending the products of the wells it should drill.

It will not do to believe that the landowner would for the pittance of fifty cents per acre per annum have knowingly encumbered his land situate in the gas district, and thereby reduced its selling value, by transferring, for an indefinite period, and for speculative purposes, the right to enter at the pleasure of the grantee or his assignee and mine the underlying gas or oil; or that he would have bargained away his prospects for large gains from the gas and oil under his land, with the knowledge that the same would be extracted through wells on other premises, and that his profits would be limited to the annual acreage rent during the process of extraction."

The lease was dated February 4, 1903, and provided there should be a well drilled within six months from that date, and if not, then appellant had the alternative 4. either to drill the well or pay $7.50 quarterly in advance after the expiration of said six months, provided the payment meet with the approval of the lessor and he accept the same. But before the landowner will be permitted to have the lease canceled the lessee must have a reasonable time within which to comply with his contract. *Hancock* v. *Diamond Plate Glass Co.* (1904), 162 Ind. 146; *Hancock* v. *Diamond Plate Glass Co.* (1906), 37 Ind. App. 351; *Consumers Gas Trust Co.* v. *Worth* (1904), 163 Ind. 141.

For what was the $7.50 paid by appellant May 4, 1903? It was simply for the purpose of renewing the rights and privileges under the contract from said May 4, 1903, and nothing more. The same is true of the $7.50 paid August 4, 1903. It was a renewal or putting life anew in this contract for three months from said date, and the appellee accepting these payments thereby agreed to the renewals thereof, and that said lands should be subject to this contract until the end of the quarter for August 4, 1903.

In *New American Oil, etc., Co.* v. *Wolff* (1906), 166 Ind. 402, the court in speaking of the quarterly renewals

said: "He might do one or the other at his option, at least for the first quarter. There being no definite time limit within which the well must be constructed, the law intervenes, and directs that it shall be accomplished within a reasonable time. This means within a reasonable time at the option of the landowner."

The contract under consideration was made February 4, 1903, by virtue of which a well was to be completed within six months. The time was extended for two quarters by the payment of $7.50 for each in advance, yet no well was completed or anything done during all this time. Notice was served on appellant by appellee on May 7, 1904, that he would not accept any renewals, and demanded that the work be begun and pushed to completion. December 6, 1904, the appellee brought this suit to quiet his title to land described in the lease. More than six months had elapsed after the receipt of the notice until suit was brought. No excuse is offered for delay. Did the appellant have such reasonable notice as would give him an opportunity to comply with the contract by drilling wells in pursuance thereof? We think the time reasonable and ample, and so hold.

The judgment is affirmed.