NEW HARMONY REALTY CORPORATION *v.* SUPERIOR OIL COMPANY.

[No. 16,435. Filed February 13, 1941.]

*Harry P. Dees, Robert C. Enlow,* and *Isidor Kahn,* all of Evansville, for appellant.

*W. B. Wagner* and *J. P. Adoue,* both of Houston, Texas; and *Miller, Miller & Bredell,* of Indianapolis, for appellee.

BLESSING, J.—This action was brought by appellee (plaintiff below) against appellant to obtain a declaratory judgment of the Posey Circuit Court pursuant to an Act of the General Assembly of the State of Indiana (Acts of 1927, pp. 208-211). The issues were formed by an amended complaint and an answer of general denial.

The cause was submitted to the trial court upon an agreed statement of facts upon which the court found for the plaintiff, fixing its rights and liabilities, and entered judgment accordingly.

The defendant (appellant here) filed its motion for a new trial, assigning as reasons therefor that the decision of the court is not sustained by sufficient evidence, and that the decision of the court is contrary to law. The court overruled the appellant's motion for a new

trial and this ruling of the lower court constitutes the assignment of error on appeal to this court.

It would unduly extend this opinion to set out in full the agreed statement of facts, and only such parts thereof that we deem pertinent to this opinion are recited.

It appears that appellant leased to the appellee certain lands for the purpose of drilling for oil and gas. Said lease, executed June 18, 1938, was to run for a period of five years and as long thereafter as oil or gas or either of them was produced from the land by the lessee; that in consideration for the said oil and gas lease and the rights, interests, and privileges granted to plaintiff as lessee thereunder, the appellee paid to the appellant six thousand and one dollars ($6,001) and upon amendment to said lease fixing the exact acreage which had been theretofore estimated, a further sum of fourteen hundred and three dollars and twenty cents ($1,403.20) was paid to appellant as a further cash consideration for said lease. This lease provided that in the event no well was commenced on said land on or before June 18, 1939, the lease should terminate as to both parties unless the appellee, on or before that date, paid or tendered to appellant fifty cents per acre for the acreage covered by the lease, and that such payment or tender should operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date; and in like manner and upon like payments the commencement of a well might further be deferred for like periods of the same number of months successively within the five-year period covered by said lease.

On the ninth day of March, 1939, the appellant served on appellee a written notice requiring appellee to commence a well for the purpose of mining and operating

for oil and gas on the real estate described in the lease on or before June 18, 1939, and to drill such well to completion with reasonable diligence and dispatch. The notice further provided that in the event no well be commenced on said premises on or before June 18, 1939, that the appellant hereby elects to declare the said lease forfeited and will proceed in a court of competent jurisdiction to quiet title to the real estate described in the lease against the appellee.

According to the agreed statement of facts the appellee, subsequent to the execution of the lease and the amendment thereto, and before the ninth day of March, 1939, entered the leased acreage and expended the sum of eighty-seven hundred dollars ($8,700) in making geophysical explorations in order to reasonably ascertain whether or not the area in question might be suited to the accumulation of oil and/or gas, and for the further purpose of ascertaining the most favorable point upon the real estate involved at which to locate a well to be drilled in search of these fugitive minerals.

It was further stipulated that from the time of the execution of the original lease and up to and including the time of filing the amended complaint in this cause, no production of oil or gas had or has been secured within the area in which is located the real estate described in the original lease and the amendment thereto. That said real estate had not been and is not now (referring to the agreed statement of facts) being drained of oil or gas by reason of production of oil and/or gas elsewhere.

The agreed statement of facts further informed the court that the appellee, in addition to the real estate leased from the appellant, was the owner of twenty-seven other oil and gas leases covering approximately twenty-eight hundred acres of real estate in Posey

County. That the approximate cost of drilling a well to the expected production levels in this particular area was fifteen thousand dollars ($15,000), and if oil or gas were found in paying quantities the matter of pipe lines and outlets for marketing such product involved the expenditure of a large sum of money. That in order to assure the existence and continuation of such supply of oil and/or gas it is the usual, ordinary, and customary business practice among producers of oil and gas to buy and hold oil and gas leases in considerable number covering an aggregate of large numbers of acres of land in a given locality. That in. addition to the cost of drilling a well for oil and gas to expected producing levels in this area, the approximate cost and value of drilling machinery, pipes and equipment used in the drilling of a well is the sum of forty thousand dollars ($40,000).

The agreed statement of facts was filed April 18, 1939.

On a finding for appellee the following judgment, omitting the matter of costs, was entered by the trial court:

"It is therefore, ordered, adjudged and decreed by the Court that plaintiff has fully complied with all its obligations under and pursuant to the provisions of a certain oil and gas lease entered between the parties hereto on June 18, 1938, and a written stipulation amending the description of the real estate covered by said lease entered into on February 14, 1939, that said oil and gas lease shall be continued in full force and effect without the commencement of operations for the drilling of a well upon said real estate for a period of twelve months from and after June 18, 1939, upon the payment or tender of payment of rental to the defend-

ant as in said lease provided on or before said date, and that in like manner and upon like payments or tenders the commencement of the drilling of a well may be further deferred for like periods of the same number of months successively during the five-year term as provided in said lease; that should the first well drilled on the land covered by said oil and gas lease be a dry hole, then if a second well is not commenced on said land within twelve months from the expiration of the last rental period for which rental has been paid, said oil and gas lease shall nevertheless be continued in full force and effect during the five-year term as provided in said lease in event plaintiff, on or before the expiration of said twelve months, shall resume the payment of rental as in said lease provided."

Under the assignment of error both causes for a new trial may be treated together.

The appellant challenges the decision of the trial court and contends that under the law of our state as applied to the facts submitted to the lower court, the contractual obligation to explore for oil and gas is such an essential part of the agreement, even though implied, that it must be treated as a condition which, if not performed by the appellee within a reasonable time after receipt of notice to perform by it, will entitle the appellant to claim a forfeiture under the contract; and that after receipt of the notice which appellant sent to appellee on the 9th day of March, 1939, the appellee had no right to defer drilling a well by the payment or tender of payment of annual rentals, but was required to drill and explore for oil.

The appellant also contends that the whole tenor of the contract shows that the prospective benefits and profits from oil or gas were the real considerations moving the contracting parties.

In addition to the facts hereinbefore set out, the oil and gas lease which gave rise to this controversy was included as a part of the agreed statement of facts.

Upon examination of this lease we find the following language:

"If no well be commenced on said land on or before the 18th day of June, A. D. 1939, this lease shall terminate as to both parties, unless the lessee shall on or before that date pay or tender to the lessor or to the lessor's credit in the Citizens Union National Bank, at Louisville, Kentucky, or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of Fifty Cents per acre for each acre covered by this lease, which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve (12) months from said date. The payment herein referred to may be made in currency, draft, or check at the option of the lessee; and the depositing of such currency, draft, or check in any post office, with sufficient postage and properly addressed to the lessor, or said bank, on or before said last mentioned date, shall be deemed payment as herein provided. *No covenant or condition herein expressed or implied in law and no notice by Lessor shall affect, or be effective to interpret, change or restrict, the foregoing express terms of this paragraph or to alter the expressed rights of the Lessee.* (Our italics.) In like manner and upon like payments or tenders, the commencement of a well may be further deferred for like periods of the same number of months successively. *And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also the*

*lessee's option of extending that period as aforesaid, and any and all other rights conferred."* (Our italics.)

The appellant to secure a reversal of this case relies on the rule laid down in the case of *Consumers Gas Trust Co.* v. *Littler* (1904), 162 Ind. 320, 70 N. E. 363, and the following decisions of the Indiana Courts: *Consumers Gas Trust Co.* v. *Ink* (1904), 163 Ind. 174, 71 N. E. 477; *Consumers Gas Trust Co.* v. *Worth* (1904), 163 Ind. 141, 71 N. E. 489; *Consumers Gas Trust Co.* v. *Crystal Window Glass Co.* (1904), 163 Ind. 190, 70 N. E. 366; *New American Oil, etc., Co.* v. *Troyer* (1906), 166 Ind. 402, 74 N. E. 37, 76 N. E. 253, 77 N. E. 739; *Puritan Oil Co.* v. *Myers* (1907), 39 Ind. App. 695, 80 N. E. 851; *Logansport, etc., Gas Co.* v. *Seegar* (1905), 165 Ind. 1, 74 N. E. 500; *Erie Crawford Oil Co.* v. *Meeks* (1907), 40 Ind. App. 156, 81 N. E. 518; *Dill* v. *Fraze* (1907), 169 Ind. 53, 79 N. E. 971; *Bollenbacher* v. *Miller* (1932), 94 Ind. App. 409, 179 N. E. 556; *LaFayette Gas Co.* v. *Kelsay* (1905), 164 Ind. 563, 74 N. E. 7; *Hancock* v. *Diamond Plate Glass Co.* (1906), 37 Ind. App. 351, 75 N. E. 659; *Consumers Gas Trust Co.* v. *Howard* (1904), 163 Ind. 170, 71 N. E. 493; *New American Oil, etc., Co.* v. *Wolff* (1906), 166 Ind. 704, 76 N. E. 255.

Because of the doctrine laid down in *Consumers Gas and Trust Co.* v. *Littler, supra,* and subsequent decisions of our courts approving directly or indirectly the doctrine in the Littler case, there was established the so-called "Indiana Rule" with reference to oil and gas leases; that is to say, giving it the broadest meaning, where an oil and gas lease is made for a nominal consideration, containing certain types of drilling clauses, or is for an indefinite term or such other conditions arise that it is necessary to effectuate the intention of the parties to the contract,

an implied covenant to drill a well will be read into the lease by reason of which a forfeiture may be claimed for failure to drill upon giving reasonable notice to the lessee to drill a well.

The so-called "Indiana Rule" that an implied covenant will be read into certain leases still prevails in this state. But our examination of the cases cited in all of the briefs, and our own search, reveals no authority justifying this court in reading into the lease in question an implied covenant on the part of the appellee to drill a well pursuant to the notice of March 9, 1939.

It would be in direct contravention of the express agreement entered into by the parties. In the first italicized portion of the quoted provisions of the lease, the contracting parties said that no covenant implied in law shall affect or be effective to interpret, change or restrict the foregoing express terms of this paragraph or to alter the expressed rights of the lessee. Part of the express terms of this paragraph are that if "no well be commenced on said land on or before June 18, 1939, this lease shall terminate as to both parties unless the lessee shall on or before that date pay or tender to the lessor . . . the sum of fifty cents (50c) per acre for each acre covered by said lease which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date."

A definite time is fixed within which the first well was to be commenced. A definite time for the termination of the lease was likewise fixed and the only way it could be preserved to the lessee if no well was commenced on or before June 18, 1939, was the payment or tender of the delay rental. In further corroboration of these definite express agree-

ments and to assure no misinterpretation, the contracting parties declared that no implied covenant should affect or be effective to interpret, change or restrict such plain expressions of agreement.

Notwithstanding the fact that an implied covenant was read into the lease involved in the case of *Consumers Gas Trust Co.* v. *Littler, supra,* the court in its opinion was careful to limit the circumstances permitting such implication and said:

"There is nothing in the subject-matter of the contract to limit the power of the parties to enter into such mutual obligations as they liked. No fraud or overreaching is claimed, and it becomes our plain duty to give the instrument the effect intended by the parties at the time it was executed. 'If there is one thing which more than another public policy requires,' said an eminent English jurist, 'it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by courts of justice.' *Printing, etc., Co.* v. *Sampson,* 19 L. R. Eq. 462."

The sanctity of contractual obligations, fixed by the parties themselves, when the subject-matter so permits, as announced in the above quotation, is a principle that cannot be questioned or ignored in determining the rights of parties who become parties to an agreement.

We recognize and are in accord with the principle that the intention of the parties at the time the contract was entered into is the controlling factor in determining what the agreement of the parties actually was, but when the language used in the contract is plain, simple, without ambiguity, and there has been no fraud or deception practiced to induce the execution of such an agreement, the inten-

tion of the parties must be taken from within the four corners of the instrument presented for consideration.

If there arises a doubt as to the intention of the parties through imperfect expressions, the aid of courts may be invoked but the courts have no right to make a new contract changing the rights or liabilities of the parties thereto.

The restriction as well as the power of courts in this respect is clearly set out in an opinion of this court in the case of *Illinois Pipe Line Co.* v. *Brosius* (1939), 106 Ind. App. 390, 20 N. E. (2d) 195, in which the court says:

"It is one thing for the court to effectuate the intention of the parties to the extent to which they may have, even imperfectly, expressed themselves, and another to add to the instrument all such covenants as upon a full consideration the court may deem fitting for completing the intentions of the parties, but which they, either purposely or unintentionally, have omitted. The former is but the application of a rule of construction to that which is written; the latter adds to the obligations by which the parties have bound themselves, and is of course quite unauthorized, as well as liable to great practical injustice in the application."

We think the intent of the parties can easily be obtained from their contract in this case and the terms of their agreement, not only leave no room for implication, but provide against it.

Neither can we agree with the appellant in its contention that the whole tenor of the contract shows that the prospective benefits and profits from oil or gas were the real considerations moving the contracting parties.

The appellant was paid a cash consideration of seventy-four hundred dollars ($7,400). This payment not only carried the lease to June 18, 1939, when the

first rental became due, but, referring to the second italicized portion of the quotation from the lease, this payment also covered the appellee's option of extending that period (upon payment of the rental), and any and all other rights conferred. This was a matter upon which the parties had a right to contract, did contract, and clearly shows the intent of the appellant to be bound to an extension if the appellee made or tendered the delay rental as provided by the agreement.

The cash payment was a real consideration and it is perfectly apparent from the terms of the lease that some portion of the cash consideration applied to the right of the appellee to exercise its option. If it now appears to the appellant that the delay rental of fifty cents (50c) per acre gives the appellee an undue advantage in determining when a well is to be drilled we can only remind appellant that this was a matter for negotiation at the time the lease was executed. Again we say that the plain language adopted by both parties discloses their intent and by their specific agreements they must be bound.

Where the contract, as in the case before us, expressly sets forth the consideration paid, and the rights and privileges obtained by reason of the payment of such consideration some other or different consideration in direct contravention of the express terms of the contract may not be substituted or implied. *Illinois Pipe Line Co.* v. *Brosius, supra.*

There is no rule of property implying a covenant on the part of the lessee to explore for oil or gas upon a notice from the appellant under the express terms of the instant lease.

Finding no reversible error, the judgment of the lower court is affirmed.

NOTE.—Reported in 31 N. E. (2d) 673.