THE PRUDENTIAL INSURANCE COMPANY OF AMERICA *v.*
LANCASTER ET AL.

[No. 20,114. Filed September 12, 1966.]

*James W. Oberfell, Crumpacker, May, Levy & Searer,* of South Bend, and *C. Malcolm Moss* and *Walter W. Siebert,* of counsel, of Chicago, Illinois, for appellant.

*James H. Pankow, Jones, Obenchain, Johnson, Ford & Pankow,* of South Bend, for appellee, Dora Lancaster.

*Daniel R. Morgan,* of South Bend, for appellee, Edward Sparkowitz d/b/a West Walkerton Truck Stop.

FAULCONER, J.—This is an appeal from a joint judgment against appellant and appellee, Edward Sparkowitz, d/b/a West Walkerton Truck Stop, on a verdict by a jury for appellee, Dora Lancaster, who had filed suit against appellant and appellee-Sparkowitz to recover benefits under a group insurance policy issued by appellant to appellee-Sparkowitz. Appellant's motion for new trial was overruled, and such action is assigned as error on appeal. Appellee-Sparkowitz did not appeal from the judgment against him.

Appellant, among other specifications in its motion for new trial, asserts error in the giving by the trial court of plaintiff-appellee's Instructions Nos. 1, 2 and 5. In view of the result we have reached, we deem it necessary to consider only the giving of the above instructions and the giving of plaintiff-appellee's Instruction No. 3.

Plaintiff-appellee's Instruction No. 5 told the jury that "[c]ancellation of group insurance coverage effected by an employer and an insurer is not effective as to a covered employee until such employee is notified of such cancellation." It further instructed the jury that if they should find in this case that "plaintiff was not notified of cancellation of coverage, if any cancellation there was, prior to her disability and surgery, then your [their] verdict should be for the plaintiff and against The Prudential Insurance Company of America for all the benefit provided by the policy."

Appellant objected to this instruction in that it is contrary to the law of Indiana and that by the expressed provisions of the policy no notice is required to be given to either, the policy holder or the individual certificate holder.

There is no provision in the master policy or the certificate issued to appellee-Lancaster, as the employee, directly binding the appellant-insurer to give notice to Dora Lancaster of the

cancellation of the policy. While some States have statutes requiring notice to be given an insured employee prior to the cancellation of a group insurance policy, there is no such statute in Indiana.

We are, therefore, presented with the question whether, under the terms of the policy or the certificate, appellant-insurer was required to give notice of its intent to cancel the policy prior to so doing. If this be answered in the negative, we must then examine the evidence to determine if any other agreement was made. If we find no other agreement, then we must determine if, as has been found in some other States, the common law is that notice to the employee should be a prerequisite to any effective cancellation or termination of the master policy.

Although from our research on this precise fact situation we have found no decisions in Indiana, we can draw from the many cases available in Indiana setting forth the general rule concerning insurance contracts.

In *Bell et al.* v. *New York Life Ins. Co.* (1963), 134 Ind. App. 614, 190 N. E. 2d 432, this court affirmed the action of the trial court in sustaining a demurrer to a complaint filed by an employee to recover benefits under a group insurance policy. We therein found the policy of insurance and certificate of insurance clear and unambiguous and that the latter fully informed the employee of the terms of the policy. We referred to the well-established rule in Indiana that our courts can only enforce the terms of the contract as agreed upon and have no authority to make a new or different contract.

In *Bell et al.* v. *New York Life Ins. Co., supra,* at page 621 of 134 Ind. App., page 435 of 190 N. E. 2d, Judge Carson, speaking for this court, stated:

"The appellants urge that no notice was given to the appellants [appellants'] decedent that his employment had terminated. We find no provision in the certificate of insurance entitling the insured to any notice."

In the case presently before us the certificate of insurance supplied appellee-Dora Lancaster is very lengthy and, indeed, contains nearly all of the provisions contained in the master policy. Both the master policy and the certificate under the section designated "Termination of Individual Insurance" contain the following pertinent provisions:

> "The Employee's employee coverage and his dependents coverage, if any, with respect to all his dependents will terminate on the first of the following to occur:
>
> "(a)  Termination of the Group Policy.
>
> "(b)  Failure of the Policyholder to include in any premium paid under the Group Policy the premium charge applicable to the Employee's employee coverage and dependents coverage, if any, thereunder."

We find this language clear and unambiguous. Also, it informs the employee of the conditions of his coverage. We find nothing in the master policy or the employer's certificate requiring notice to an employee by the insurer in the event it terminates said policy on either grounds.

We have examined the cases cited by appellant in its able brief, and those set out in Annot., 68 A. L. R. 2d 215 (1959). From our examination we conclude that there is a conflict between, and sometimes within, the various jurisdictions on the issue of whether prior notice is required to be given the employee by the insurer before cancellation. We are of the opinion that the cases requiring such notice can be distinguished from the one here under consideration by the facts involved, the provisions of the policy and certificates, the court's interpretations of said provisions, or upon State statutes.

In our opinion, there being no statute of our State applicable, no provision in the group policy or certificate of insurance directly and specifically requiring notice, or from which we could infer notice was agreed upon as a condition to termination, no such notice was required in the present case.

We agree with the statement of the Appellate Court of Ohio in *Taylor* v. *Continental Assurance Company* (1956), 104 Ohio App. 78, 144 N. E. 2d 213, at page 217, that:

> "[I]t would be desirable that some notice be accorded to employees covered by group policy of its termination so that they might be assured of the accrual of the right to have a new policy issued to them, but we cannot hold that the phraseology employed in the section will permit of this construction."

We, as the judiciary, must leave to the Legislative and Executive departments of Government the task of determining public policy. *State ex rel. Kostas* v. *Johnson* (1946), 224 Ind. 540, 547, 69 N. E. 2d 592, 168 A. L. R. 1118.

We also must leave to individual parties the right to make the terms of their agreements as they deem fit and proper, and, as long as those terms are clear and unambiguous and are not unlawful, we can only enforce them as agreed upon. *New Harmony Realty Corp.* v. *Superior Oil Co.* (1941), 108 Ind. App. 668, 678, 31 N. E. 2d 673.

The trial court gave plaintiff-appellee's tendered Instruction No. 3 which informed the jury that "[w]here a group insurance policy provides for premium payments by the employer to the insurer and further provides for employee contributions, then the insurer constitutes and designates the employer as its agent to collect and remit the contributory part of the premiums." Such instruction further stated that if the jury found that the insurance company agreed that the employer-Sparkowitz should collect employee contributions and remit them to the insurance company "then you may find Edward Sparkowitz to have been the agent of The Prudential Insurance Company of America in the collection and remittance of such contributory part of the premiums."

Although appellant does not contend the giving of this instruction as error in this appeal, since we have concluded this cause must be reversed with instructions to grant a new

trial, and it appears likely said instruction may again be tendered, we feel it incumbent upon us to comment thereon.

Both our Supreme Court and this court have decided this issue to the contrary in the absence of a statutory or policy provision stating, or from which we can infer, that the parties thereto agreed otherwise.

"It seems clear to us from the relations of the parties that in the negotiations that resulted in the issuance of the policy; in receiving and accepting the certificate referred to in clause 6; and in deducting premiums from the appellee's pay and in remitting them to the insurance company the coal company was acting in the capacity of agent for the appellee." *Metropolitan Life Ins. Co.* v. *Henry* (1940), 217 Ind. 33, 36, 24 N. E. 2d 918.

"The master policy was in the hands of Inland Steel Company. It was the agent of its employees in the negotiations that resulted in the issuance of the policy and in deducting premiums from their pay and remitting them to the insurance company. *Metropolitan Life Ins. Co.* v. *Henry* (1940), 217 Ind. 33, 24 N. E. 2d 918. Appellant's decedent was therefore charged with knowledge of the provisions of the policy." *Morales* v. *Equitable Life Assur. Soc. of U.S.* (1945), 115 Ind. App. 565, 567, 60 N. E. 2d 747.

Inasmuch as there is no statute in Indiana pertaining to this issue, and there is no provision in the policy from which we can determine that the parties agreed that the employer was the agent of the insurance company, the law as above stated in the *Henry* case and the *Morales* case is controlling.

Appellant has asserted error in the giving by the trial court of plaintiff-appellee's tendered Instruction No. 1 which stated, in effect, that a provision in an insurance policy providing for forfeiture automatically upon nonpayment of premium does not render the policy void, but merely voidable, necessitating some action on the part of the insurer to bring about the forfeiture; and plaintiff-appellee's tendered Instruction No. 2 which informed the jury, in substance, that if the insurance company makes demand for the payment of a premium subse-

quent to a premium default, the insurance company waives its right to forfeit the policy for nonpayment of the premium.

We deem it unnecessary to determine the correctness of these instructions since the evidence shows that the insurance company cancelled the policy at the specific request of appellee-Sparkowitz as employer.

Therefore, this cause is reversed with instructions to grant appellant's motion for new trial and for further proceedings not inconsistent with this opinion.

Judgment reversed with instructions.

Wickens, P.J. and Carson, J., concur.

Prime, J., dissents with opinion.

DISSENTING OPINION

PRIME, J.—I would affirm the decision below and cite as controlling the reasoning applied in *Lindgren* v. *Metropolitan Life Insurance Company* (1965), 57 Ill. App. 2d 315, 206 N. E. 2d, 734. In the instant case, as in the case cited, the facts are clear that the insured employee was allowing premiums for the assumed group coverage to be withheld from her paycheck; and was functioning under the apparently correct belief that the coverage was in fact absolute. In both cases the termination was enacted between the insurer and the employer—in neither instance was the actual insured given notice of cancellation until after a claim had arisen. In the Lindgren decision, the Illinois Appellate Court, in ruling in favor of the insured employee, held that a termination of the master policy, without notice to the insured, was ineffective.

Further, I would hold that the decision in *Poch* v. *Equitable Life Assurance Society*, 343 Pa. 119, 22 A. 2d 590, 142 A. L. R. 1279, bears directly upon the instant situation:

> "Upon a review of the authorities, and upon reason as well, our conclusion is that, under a group policy like that now before us, the insured employee must be regarded as a party to the insurance contract at least to the extent that

the group policy cannot be cancelled or any of its effective provisions eliminated, by either the employer or insurer, except in a manner provided by the policy, without giving such employee notice of the intended cancellation or modification, so that he may timely exercise any conversion privilege which may be available to him under the terms of the policy or, where such privilege is not given, in order that he may seasonably obtain similar insurance protection on his own account elsewhere. . . ."

I feel strongly that inherent in modern society's adaptibility to the advantages of group insurance is the continuing need to observe the rights and privileges of the insured individual. If it is to be assumed, as I believe it must, that there is of necessity little personal contact and advisement between the insurer and insured in a group policy—sometime involving hundreds or even thousands of individuals—then I feel compelled to determine that the rights of these individuals, if not protected by the policies whose premiums they willingly pay, must be protected by the courts of this state.

The language of Judge Arterburn in his concurring opinion in *State Security Life Ins. Co.* v. *Kintner* (1962), 243 Ind. 331, 339, 185 N. E. 2d 527, although referring to the time at which a premium is due, seems particularly pertinent to my reasoning in this instance:

"An insurance contract is a detailed and complex instrument, drafted by expert legal counsel, standardized and presented in mass-produced form and delivered to the applicant for acceptance, normally without benefit of legal counsel on his part. It has been called a 'contract of adhesion' for the reason that the insured is expected to 'adhere' to it as it is, with little or no choice as to its terms. . . .

"Coupled with this situation is the recognized fact that rarely, if ever, does an insured read his insurance contract, although the law has said, with reference to contracts generally, that a party is bound by what the instrument says, though ignorant of its terms. In fact, realistically, even if the insured had the inclination to attempt to read the policy, I doubt that he would gain much more knowledge than he previously had because of the technical language he would encounter. I doubt that most lawyers or even judges

(who say one is presumed to have read his insurance policy) ever read them."

I fail to understand how a group insurer can praise the advantages of this type of policy, and yet defend against a claim such as here, with the contention that he had no duty to inform his insured of cancellation. Admittedly, this could become a cumbersome procedure and might foreseeably necessitate rate adjustments. However, some detriment accompanies most advantages and I cannot believe that mere convenience should outweigh the rights of the individuals involved.

It is my opinion that the insured had a vested interest in the protection for which she paid, at least to the extent that she could not be divested of all protection without the benefit of adequate notice.

I also have grave doubts concerning the cancellation of this policy and, indeed, whether or not it was actually cancelled.

I call attention to the testimony of Edward Sparkowitz:

"I called the South Bend Office of Prudential and spoke with the manager. I told him I would like to drop this group policy and he said he would have to go through the Chicago Office and *send a form for the employees to sign.*

"He said it couldn't be terminated through him. I did not receive a form for the employees to sign. I called them again and they said no form had come through. There were times when I only talked to girls on the phone at the office and I spoke to a new manager, Kruger. This could have been in April. He said that he just started, didn't know much about it, would look into it and let me know. I think I called on May 5, 1961.

"I talked to them later, that they would have to sign a paper from Prudential. I talked to Mrs. Lancaster before the January phone call. I don't remember if she replied. I kept deducting from each employee's pay, *waiting until papers came.*

"I don't know what day the policy was cancelled.

"I had conference with everyone about the termination. I was told by Prudential that I was liable for the money deducted. *I still haven't received the form.*"

We also have testimony given by Emily Schang, witness for The Prudential, and office supervisor for the Northern Indiana Agency for Prudential.

"When a case is lapsed, we carry it in a D.S.P. Account as arrears, and if it doesn't clear it is carried in arrears and taken out of our account. It's a bookkeeping transaction. We do not carry the account for a month, the premiums are due the first. It is carried to balance the account arrearage *until something comes from Home Office.*

"We can't strike one of these off our records for purposes of accounting until the form comes from the Home Office. Nothing was sent to Mr. Sparkowitz on 4/10/61. Nothing went to Mrs. Lancaster. Prudential had no contact with Mrs. Lancaster in regard to the lapse. Employment Security Programs are a substantial volume of the business at Prudential.

"This case was transferred from the LaSalle Agency. It was not belated because we didn't want to accept responsibility of cancellation. *We try to conserve all of our business.*"

It appears from the above statements that there was slip shod bookkeeping in this matter from beginning to end, which does little credit to the appellant here. In my opinion there is considerable doubt as to the day of cancellation or whether the Home Office actually did cancel.

The only evidence appearing in the record on this score is a letter written to the assured, Sparkowitz, by a minor functionary, a bookkeeper in an agency office.

I would affirm.

NOTE.—Reported in 219 N. E. 2d 607.